**MARBRUNAK, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF STOW, OHIO, Defendant–Appellant, Cross–Appellee.**

Nos. 91–3806, 91–3849.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1992.

Decided Aug. 31, 1992.

Amie L. Bruggeman (argued), Ronald S. Kopp, Charles E. Zumkehr, Roetzel & An-

dress, Akron, Ohio, for plaintiff-appellee cross-appellant in No. 91–3806.

L. James Martin (briefed), James A. Merlitti (argued), Stow, Ohio, for defendant-appellant cross-appellee.

David K. Flynn, Rebecca K. Troth, U.S. Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, D.C., for U.S. amicus curiae in No. 91–3806.

Diane M. Weaver (briefed), Atty. Gen. Office, Columbus, Ohio, for Ohio Dept. of Mental Retardation and Developmental Disabilities amicus curiae.

Ronald L. Smith (briefed), Michael Kirkman, Ohio Legal Rights Service, Columbus, Ohio, for Ohio Legal Rights Service amicus curiae.

Amie L. Bruggeman (argued and briefed), Ronald S. Kopp, Roetzel & Andress, Akron, Ohio, for plaintiff-appellee cross-appellant in No. 91–3849.

David K. Flynn, Rebecca K. Troth (briefed), U.S. Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, D.C., for U.S. amicus curiae in No. 91–3849.

Before: JONES and NORRIS, Circuit Judges; and WOODS, District Judge.[*]

ALAN E. NORRIS, Circuit Judge.

Defendant, City of Stow, appeals from the district court's order granting the permanent injunction requested by plaintiff, Marbrunak, Inc., enjoining the city from enforcing a zoning ordinance imposing special safety requirements on a residence plaintiff sought to operate for four mentally retarded adult women. The injunction resulted from the court's conclusion that the city had violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.* The case was submitted to the court upon stipulated facts. Plaintiff cross-appeals the refusal of the district court to award attorney's fees.

Plaintiff is a non-profit corporation organized by the parents of the mentally retarded women. In February 1990, the Ohio

[*] The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

Department of Mental Retardation and Developmental Disabilities awarded plaintiff a grant to establish a "family consortium" home. Under the rules of the department, a family consortium consists of individuals with mental retardation and developmental disabilities, and a group of their relatives who wish to provide for those individuals a home which is an extension of their family home. The department encourages families to combine their resources with public funds in order to provide these family-like homes. State licenses are not required for family consortium homes.

In April 1990, the parents signed a purchase contract for a house in a residential neighborhood in the city. The house previously had been used as a single-family residence, and was located in an area zoned for single-family dwellings. The parents were advised that they would need a conditional-use permit because the intended use made the home a boarding house, rather than a single-family dwelling. The city's law director also told them the home must satisfy section 153.149 of the city's zoning code, an ordinance which requires extensive safety protections for family homes housing individuals with developmental disabilities. These requirements are more rigorous than the state department's safety rules for family consortium homes, and are far more extensive than those required of single-family dwellings.[1]

The parents were told that they could petition the city's Board of Zoning Appeals for a variance from the safety restrictions.

Rather than seek the variance, plaintiff filed this lawsuit in the district court.

In arriving at its conclusion that the zoning ordinance as applied to plaintiff violated the FHAA, the district court noted that under the Act it is unlawful to discriminate in the sale of a dwelling to any person on the basis of handicap,[2] and that discrimination includes the refusal to make reasonable accommodations in rules when those accommodations may be necessary to afford a handicapped person equal opportunity to enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). The Act defines "handicap" as a physical or mental impairment which substantially limits a person's major life activities. 42 U.S.C. § 3602(h). The court also noted legislative history indicating an intent that the prohibition against discrimination extend to zoning practices and enforcement of otherwise neutral safety regulations that have the effect of limiting the ability of handicapped individuals to live in the residence of their choice. The city does not dispute the court's conclusion that the zoning practices complained of by plaintiff are subject to federal court scrutiny pursuant to the FHAA.

Also at issue in the trial court was the city's position that plaintiff's intended use was other than as a single-family dwelling and that plaintiff would therefore be required to obtain a zoning certificate to allow that use in a single-family zone. Citing Ohio case law, the district court determined that the intended use qualified as

---

**1.** The law director advised the parents that they would have to provide the home with a whole-house sprinkler system with alarms, fire retardant wall and floor coverings, lighted exit signs above all doorways, push bars on all doors, fire extinguishers every thirty feet, smoke alarms, and bring the unit into conformity with city codes. The only safety requirement imposed by the city on single-family homes not occupied by developmentally disabled persons is that smoke alarms be provided. The home already was equipped with smoke alarms. Each of the four women is fully ambulatory, able to hear, and is sighted. They will live with a house parent hired by their parents.

**2.** [I]t shall be unlawful—
    . . . .

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
    . . . .
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available. . . .
    . . . .
(3) For purposes of this subsection, discrimination includes—
    . . . .
(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. . . .
42 U.S.C. § 3604.

single-family use, and the city has not appealed that determination.

The city also repeats on appeal its hypertechnical argument that plaintiff lacks standing until it has suffered the required extent of injury, since it has not yet been subjected to actual enforcement of the zoning code. We agree with the district court's reasoning and conclusion that those arguments are not well-taken.

A puzzling aspect of this appeal is disregard below for whether the case was ripe for consideration by the district court, since plaintiff may have failed to exhaust administrative remedies that could have afforded it immediate and complete relief. Ripeness was considered only in the context of whether plaintiff would first have to apply for a variance from all the safety requirements of the ordinance and be turned down, before it would have standing to challenge the ordinance. However, the language of the ordinance itself presents a more basic question. According to the zoning ordinance, it applies "exclusively to those homes permitted to be established under ... R.C. § 5123.18 and secure licensure from the division of mental retardation and developmentally disabled [sic]." Stow Zoning Code § 153.149(C). Ohio Revised Code Section 5123.18 authorizes the Director of the Department of Mental Retardation and Developmental Disabilities to contract for residential services for certain mentally retarded and developmentally disabled persons, and requires those who contract to provide those services to meet licensing requirements. Ohio Rev.Code Ann. § 5123.18(A), (D) (Anderson 1989). Ohio Revised Code Section 5123.19 provides for licensing residential facilities by the department, but exempts "a dwelling in which the ... developmentally disabled residents ... are being provided supported living pursuant to sections 5126.40 to 5126.47 of the Revised Code." § 5123.-19(A)(1).

Because it is uncontroverted that the developmentally disabled residents of the home in question were being provided supported living pursuant to those sections of Ohio law, and a license was not required

from the department, the zoning ordinance would appear on its face not to apply to plaintiff. Nevertheless, the city's law director thought it did. Rather than appeal that apparently erroneous opinion to the city's Board of Zoning Appeals, plaintiff chose to bring its grievance to the district court.

That is unfortunate, since such a routine administrative appeal holds out the promise of speedy relief from what one might assume to be an almost daily occurrence—a zoning official forming a mistaken opinion as to the applicability of confusing zoning requirements. Upon a ruling by the Board that the ordinance did not apply, plaintiff could have moved on unmolested, and federal court resources could have been directed towards situations requiring their attention. Despite this apparently transparent failure to exhaust a straightforward and simple administrative remedy, the issue was not squarely raised or addressed below. Nor were we afforded in oral argument a satisfactory explanation for this oversight. However, because the record was not developed sufficiently on the issue in the trial court, or briefed in this court, we are in no position to resolve it now.

Accordingly, we now turn to the issue which was focused upon in the district court. In oral argument, before this court, counsel for the city conceded that if the ordinance were enforced *in toto* against plaintiff, it would violate the FHAA since non-handicapped, single-family dwelling occupants were not required to comply with the ordinance. Accordingly, the issue boiled down to whether requiring plaintiff to seek a zoning variance was an unduly burdensome means of ascertaining the extent to which the ordinance would be enforced. According to the district court,

Marbrunak's claims are that the City has enacted ordinances which unlawfully discriminate against developmentally disabled persons ... by imposing onerous safety and permit requirements on single-family residences occupied by developmentally disabled persons, whereas such restrictions are not applied to any other single-family use.... Marbrunak

... must either ... comply with safety restrictions applicable to licensed "family homes," ... or endure the arduous and time-consuming process of seeking a variance from the Board of Zoning Appeals.... The options given to Marbrunak by the City require it to choose between incurring needless expense in installing unnecessary safety devices or ... obtain unnecessary permits and variances before it can open the home.

The district court concluded that the zoning ordinance as applied to plaintiff violates the FHAA because it imposes safety requirements which are more stringent than safety requirements applied to other single-family residences, and the ordinance makes no effort to tailor the safety requirements to the particular disabilities of plaintiff's residents. According to the district court, the requirements

are based on generalized perceptions about the inability of developmentally disabled persons to live safely in a "normal" home. The City would require that Marbrunak install an alarm system interconnected to a ceiling sprinkler system, yet it offers no evidence that any of the residents of the home are hearing impaired or otherwise unable to respond to the standard smoke alarms with which the home is already equipped.... The City requires Marbrunak to install doors with push-bars that swing outward with lighted exit signs posted above each door of the home without offering any evidence that the residents are or would be unable to use the types of doors already in the home, and without showing how the women would need lighted exit signs to find them. The City requires Marbrunak to install fire walls and flame retardant wall coverings without showing why such renovations are needed to ensure the safety of the residents. In sum, the requirements have little or no correlation to the actual abilities of the citizens upon whom they are imposed.... [T]he City's "blanket" fire and safety restrictions applied to *all* homes wherein developmentally disabled persons live, regardless of the individual abilities of the residents, are based on "false [and] over-

protective assumptions about the needs of handicapped people, as well as unfounded fears of difficulties about the problems that their tenancies may pose," ... and ... the application of these restrictions to Marbrunak's family consortium home unreasonably limits its residents' opportunity to live in the community of their choice, a right guaranteed them by the FHAA....

We agree with the district court that the ordinance as applied to plaintiff violates the Act.

■ The city is correct in its contention that the FHAA does not prohibit the city from imposing *any* special safety standards for the protection of developmentally disabled persons. It may impose standards which are different from those to which it subjects the general population, so long as that protection is demonstrated to be warranted by the unique and specific needs and abilities of those handicapped persons.

However, as the district court noted, this ordinance makes no attempt at individualizing its requirements to the needs or abilities of particular kinds of developmental disabilities. The ordinance requires installation of protective safety devices in a residential facility for persons with developmental disabilities attributable to mental retardation, cerebral palsy, epilepsy, or autism. The safety measures include nearly every safety requirement that one might think of as desirable to protect persons handicapped by any disability—mental or physical; and all the requirements apply to all housing for developmentally disabled persons, regardless of the type of mental condition that causes their disabilities or of the ways in which the disabilities manifest themselves. The ordinance makes no effort, for example, to promulgate one set of safety standards tailored to the needs and abilities of developmentally disabled persons who are hearing impaired, another for those whose vision is impaired, another for those whose conditions impair their mobility, etc. Instead, the ordinance lumps all the requirements together and makes all of them applicable in the instance of every

developmental disability. The expense that would result from complying with needless safety requirements amounts to an onerous burden which has the effect of limiting the ability of these handicapped individuals to live in the residence of their choice.

The question then becomes whether other provisions of the zoning code narrow application of the ordinance to only those safety requirements that are directed at the unique and specific needs and abilities of plaintiff's residents. The city argues that the narrowing is accomplished through its procedures for obtaining a zoning variance. However, the variance procedure provided by the city's zoning code cannot be said to save the ordinance by satisfactorily individualizing its safety requirements to the needs and abilities of the residents of plaintiff's home. The ordinance predates the FHAA and on its face violates that Act. No policy decision has been made by the city's legislative authority to conform the ordinance to the Act. It seems incongruous for the city to now argue that such legislative policy choices should be foisted on an *ad hoc* basis upon members of an administrative board and applicants for zoning variances. Manifestly, because the ordinance does not even mention the variance procedure, it cannot be argued that it is contemplated as part of a design that the safety requirements will always be tailored to the individual needs and abilities of handicapped applicants. Accordingly, in the absence of such a stated purpose and any standards for individualizing the requirements to applicants, resort to that procedure shifts to an applicant the burden of initially determining which safety requirements (if any) are appropriate to its particular situation, and then convincing the Board of Zoning Appeals that it should emasculate the ordinance by eliminating all but those requirements. Under the city's scenario, each applicant is required to persuade the Board to rewrite from the whole cloth particularized requirements, in order to customize an over-broad and over-inclusive ordinance to a handicapped applicant's needs. Subjecting developmentally disabled persons to such a standardless and unpredictable process is unwarranted and has the effect of limiting their ability to live in the residence of their choice.

Furthermore, as mentioned earlier, if one reads division (C) of the ordinance to say that it does not apply to plaintiff at all, then clearly an onerous and discriminatory burden would be placed upon plaintiff by requiring it to seek a variance that waives each and every safety requirement in order that plaintiff might be in the same position it would have been had the ordinance never been enforced!

■ Turning now to plaintiff's cross-appeal, we agree with its contention that the trial court abused its discretion by summarily denying its request for an award of attorney's fees and costs, without comment. Accordingly, that matter is remanded to the district court for further proceedings, since, upon the state of the record, we are unable to determine whether the denial of the request was warranted.

The city's appeal is found to be without merit and the judgment of the district court is affirmed in all regards except its denial of plaintiff's request for attorney's fees and costs, which matter is remanded to the district court for further consideration.