89 F.3d 285
 17 A.D.D. 867
 Geraldine LARKIN, Plaintiff-Appellee,
Michigan Protection and Advocacy Service, Intervenor-Appellee,
v.
STATE OF MICHIGAN DEPARTMENT OF SOCIAL SERVICES, Defendant-Appellant,
State of Michigan; City of Westland, Defendants.
 No. 95-1138.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 10, 1996.
Decided July 16, 1996.
 
 1
 Gregory J. Bator (argued and briefed), Bator & Zartarian, Birmingham, MI, for plaintiff-appellee Geraldine Larkin.
 
 
 2
 Stewart R. Hakola (briefed), Michigan Protection & Advocacy Service, Marquette, MI, Gayle C. Rosen (argued and briefed), Michigan Protection & Advocacy Service, Livonia, MI, Beth Pepper (briefed), Stein & Schonfeld, Baltimore, MD, for intervenor Michigan Protection and Advocacy Service.
 
 
 3
 Stephen H. Garrard, Asst. Atty. Gen. (argued and briefed), Dept. of Atty. Gen., Social Services Div., Lansing, MI, for defendant-appellant Michigan Dept. of Social Services.
 
 
 4
 William D. Winters, Angela B. King (briefed), McLain & Winters, Ypsilanti, MI, for amicus curiae Ypsilanti Tp.
 
 
 5
 Roy W. Froemming, Wisc. Coalition for Advocacy, Madison, WI, for amicus curiae Nat. Ass'n of Protection & Advocacy Systems.
 
 
 6
 Kathy L. Peterson (briefed), Ypsilanti, MI, for amici curiae ARC of Michigan, Autism Society of Michigan, United Cerebral Palsy of Michigan, Ass'n for Community Advocacy, Disability Network, American Disabled for Asst. Programs Today (ADAPT), of Michigan.
 
 
 7
 Kenneth C. Sparks, Bauckham, Reed, Lang, Schaefer & Travis, Kalamazoo, MI, for amicus curiae Michigan Tps. Ass'n.
 
 
 8
 Rebecca K. Troth (argued and briefed), U.S. Dept. of Justice, Civil Rights Div., Appellate Section, Washington, DC, for amicus curiae U.S.
 
 
 9
 Before: SUHRHEINRICH and SILER, Circuit Judges; ANN ALDRICH,* District Judge.
 
 
 10
 ANN ALDRICH, District Judge.
 
 
 11
 Defendant-Appellant State of Michigan Department of Social Services appeals from an order of the district court granting summary judgment in favor of plaintiff-appellee Geraldine Larkin and intervenor-appellee Michigan Protection and Advocacy Services. The district court held that the spacing and notice requirements of the Michigan Adult Foster Care Licensing Act are preempted by the federal Fair Housing Act and violate the equal protection clause of the fourteenth amendment to the United States Constitution. Because we agree that the Fair Housing Act preempts the spacing and notice requirements of the Michigan Adult Foster Care Licensing Act, we affirm without reaching the equal protection issue.
 
 I.
 
 12
 Geraldine Larkin sought a license to operate an adult foster care (AFC) facility which would provide care for up to four handicapped adults in Westland, Michigan. The Michigan Adult Foster Care Licensing Act (MAFCLA), M.C.L. §§ 400.701 et seq., governs the issuance of such licenses. It prevents the issuance of a temporary license if the proposed AFC facility would "substantially contribute to an excessive concentration" of community residential facilities within a municipality. M.C.L. § 400.716(1). Moreover, it requires compliance with section 3b of the state's zoning enabling act, codified as M.C.L. § 125.583b. M.C.L. § 400.716(3). Section 3b of the zoning act provides in part:
 
 
 13
 At least 45 days before licensing a residential facility [which provides resident services or care for six or fewer persons under 24-hour supervision], the state licensing agency shall notify the council ... or the designated agency of the city or village where the proposed facility is to be located to review the number of existing or proposed similar state licensed residential facilities whose property lines are within a 1,500-foot radius of the property lines of the proposed facility. The council of a city or village or an agency of the city or village to which the authority is delegated, when a proposed facility is to be located within the city or village, shall give appropriate notification ... to those residents whose property lines are within a 1,500-foot radius of the property lines of the proposed facility. A state licensing agency shall not license a proposed residential facility if another state licensed residential facility exists within the 1,500-foot radius of the proposed location, unless permitted by local zoning ordinances or if the issuance of the license would substantially contribute to an excessive concentration of state licensed residential facilities within the city or village.
 
 
 14
 M.C.L. § 125.583b(4). MAFCLA also requires notice to the municipality in which the proposed AFC facility will be located. M.C.L. § 400.732(1).
 
 
 15
 Michigan Department of Social Services (MDSS) notified Westland of Larkin's application in accordance with MAFCLA. Westland determined that there was an existing AFC facility within 1,500 feet of the proposed facility and so notified MDSS. It also notified MDSS that it was not waiving the spacing requirement, so that MDSS could not issue a license to Larkin. When MDSS informed Larkin of Westland's action, Larkin withdrew her application.
 
 
 16
 Larkin filed suit in the United States District Court for the Eastern District of Michigan, alleging that Michigan's statutory scheme violates the Fair Housing Act (FHA) as amended by the Fair Housing Amendments Act (FHAA). Larkin also alleged that MAFCLA violates the equal protection clause of the fourteenth amendment to the constitution. In addition, Larkin named Westland as a defendant, alleging that it had violated the FHAA by not waiving the 1500-foot requirement. Michigan Protective and Advocacy Services (MPAS) moved to intervene as of right on the ground that it had a federal mandate to protect the rights of the handicapped. The district court granted that motion.[1]
 
 
 17
 The parties agreed that there were no disputed issues of material fact and filed cross-motions for summary judgment. After oral argument, the district court ruled that the 1500-foot spacing requirement and the notice requirements of M.C.L. § 125.583b(4), as incorporated into MAFCLA by M.C.L. § 400.716(3), were preempted by the FHAA because they were in conflict with it. The court also ruled that these statutes violated the equal protection clause of the fourteenth amendment. Accordingly, the court enjoined the defendants from enforcing §§ 125.583b(4) & 400.716(3).[2] MDSS appeals this decision.
 
 
 18
 However, the court ruled that Westland did not violate the FHAA because it lacked the authority to waive the 1500-foot requirement under Michigan law. The court also rejected Larkin's claim for damages as barred under the eleventh amendment. The plaintiffs do not appeal these rulings.
 
 
 19
 Larkin filed a motion for reconsideration and clarification of the court's order, as the court did not discuss M.C.L. § 400.732(1), which requires MDSS to notify the municipality of the proposed facility. The defendants concurred with the plaintiff's motion in so far as it sought clarification. The court, noting the similarity in the notice provisions of M.C.L. §§ 125.583b(4) & 400.732(1), held that § 400.732(1) also violated the FHAA and the equal protection clause, and enjoined its enforcement. The defendants also appeal from this order.
 
 II.
 
 20
 The defendants appeal from a grant of summary judgment. We review grants of summary judgment de novo. Winningham v. North American Resources Corp., 42 F.3d 981, 984 (6th Cir.1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, the parties agree that there are no disputes as to any material facts. Therefore, the only question is whether the plaintiffs are entitled to judgment based on the agreed upon facts.
 
 III.
 
 21
 Congress passed the federal Fair Housing Act (FHA) as Title VIII of the Civil Rights Act of 1968 to prohibit housing discrimination on the basis of, inter alia, race, gender, and national origin. In 1988, Congress passed the Fair Housing Amendments Act (FHAA), which expanded the coverage of the FHA to include people with disabilities. The FHA, as amended by the FHAA, makes it unlawful to:
 
 
 22
 discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
 
 
 23
 * * * * * *
 
 
 24
 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available.
 
 
 25
 42 U.S.C. § 3604(f)(1) (emphasis added). It is well-settled that the FHAA applies to the regulation of group homes. See Smith & Lee Assoc. v. City of Taylor, Mich., 13 F.3d 920, 924 (6th Cir.1993); Marbrunak, Inc. v. City of Stow, Ohio, 974 F.2d 43, 45 (6th Cir.1992). Moreover, Congress explicitly intended for the FHAA to apply to zoning ordinances and other laws which would restrict the placement of group homes. See H. Rep. No. 711, 100th Cong., 2d Sess. 24, reprinted in 1988 U.S.C.C.A.N. 2173, 2185.
 
 A. Preemption
 
 26
 The plaintiffs argue, and the district court found, that the MAFCLA provisions at issue discriminate in violation of the FHAA, and are therefore preempted by it. Congress may preempt state law in one of three ways. Michigan Canners & Freezers Assn., Inc. v. Agricultural Marketing and Bargaining Board, 467 U.S. 461, 469, 104 S.Ct. 2518, 2522-23, 81 L.Ed.2d 399 (1984). First, Congress may explicitly preempt state laws. Id. Second, it may preempt by "occupying the field." Id. Finally, federal law preempts state law when they actually conflict, i.e., it is not possible to comply with both the state and the federal laws. Id. In this case, the FHAA expressly provides that any state law "that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615. Thus, the FHAA expressly preempts those state laws with which it conflicts, and the first and third types of preemption merge in this case.
 
 B. Discrimination
 
 27
 This brings us to the crux of the case: whether the statutes at issue discriminate against the disabled in violation of the FHAA. The district court held that two different aspects of MAFCLA violate the FHAA: (1) the 1500-foot spacing requirement of M.C.L. § 125.583b(4); and (2) the notice requirements of M.C.L. §§ 125.583b(4) & 400.732(1).[3]
 
 
 28
 Most courts applying the FHA, as amended by the FHAA, have analogized it to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which prohibits discrimination in employment. They have concluded that a plaintiff may establish a violation under the FHA by showing either: (1) that the defendants were motivated by an intent to discriminate against the handicapped ("discriminatory intent" or "disparate treatment"); or (2) that the defendant's otherwise neutral action has an unnecessarily discriminatory effect ("disparate impact"). See, e.g., Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir.1995); Doe v. City of Butler, Pa., 892 F.2d 315, 323 (3rd Cir.1989); Potomac Group Home Corp. v. Montgomery County, Maryland, 823 F.Supp. 1285, 1295 (D.Md.1993); Horizon House Developmental Serv., Inc. v. Township of Upper Southampton, 804 F.Supp. 683, 693 (E.D.Pa.1992), aff'd without opinion, 995 F.2d 217 (3rd Cir.1993). Some courts have identified a third type of case where a challenged practice discriminates against the handicapped on its face. See Potomac, 823 F.Supp. at 1295; Horizon House, 804 F.Supp. at 693. However, facially discriminatory actions are just a type of intentional discrimination or disparate treatment, and should be treated as such. See Bangerter, 46 F.3d at 1500-01 (ordinances which discriminate on their face are properly analyzed as a type of intentional discrimination). This is also the approach taken by the Supreme Court in employment discrimination cases. See International Union, United Auto. Aerospace & Agricultural Implement Workers v. Johnson Controls, Inc., 499 U.S. 187, 197-200, 111 S.Ct. 1196, 1202-04, 113 L.Ed.2d 158 (1991) (treating a facially discriminatory policy as intentional discrimination).
 
 
 29
 Here, the challenged portions of MAFCLA are facially discriminatory. The spacing requirement prohibits MDSS from licensing any new AFC facility if it is within 1500 feet of an existing AFC facility. M.C.L. § 125.583b(4). The notice requirements require MDSS to notify the municipality of the proposed facility, and the local authorities to then notify all residents within 1500 feet of the proposed facility. M.C.L. §§ 125.583b(4) & 400.732(1). By their very terms, these statutes apply only to AFC facilities which will house the disabled, and not to other living arrangements. As we have previously noted, statutes that single out for regulation group homes for the handicapped are facially discriminatory. Smith & Lee, 13 F.3d at 930; see also Bangerter, 46 F.3d at 1500 (statutes that apply only to the handicapped are facially discriminatory); Potomac, 823 F.Supp. at 1295 (notice to neighbors provision is facially discriminatory); Horizon House, 804 F.Supp. at 694 (1000-foot spacing requirement is facially discriminatory). Accordingly, this is a case of intentional discrimination or disparate treatment, rather than disparate impact.
 
 
 30
 MDSS argues that the statutes at issue cannot have a discriminatory intent because they are motivated by a benign desire to help the disabled. This is incorrect as a matter of law. The Supreme Court has held in the employment context that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect." Johnson Controls, 499 U.S. at 199, 111 S.Ct. at 1203-04. Following Johnson Controls, all of the courts which have considered this issue under the FHAA have concluded the defendant's benign motive does not prevent the statute from being discriminatory on its face. See Potomac, 823 F.Supp. at 1295; Horizon House, 804 F.Supp. at 694. MDSS relies on Familystyle of St. Paul, Inc. v. City of St. Paul, 728 F.Supp. 1396 (D.Minn.1990), aff'd, 923 F.2d 91 (8th Cir.1991), for the proposition that proof of a discriminatory motive is required for a finding of discriminatory intent. However, both decisions in Familystyle preceded the Supreme Court's opinion in Johnson Controls. Thus, they have been implicitly overruled by Johnson Controls in this regard.
 
 
 31
 Because the statutes at issue are facially discriminatory, the burden shifts to the defendant to justify the challenged statutes. However, it is not clear how much of a burden shifts. MDSS urges us to follow the Eighth Circuit and rule that discriminatory statutes are subject to a rational basis scrutiny, i.e., they will be upheld if they are rationally related to a legitimate government objective. See Oxford House-C v. City of St. Louis, 77 F.3d 249, 252 (8th Cir.1996); Familystyle, 923 F.2d at 94. Plaintiffs urge us to reject the rational basis test and adopt the standard announced by the Tenth Circuit, which requires the defendant to show that the discriminatory statutes either (1) are justified by individualized safety concerns; or (2) really benefit, rather than discriminate against, the handicapped, and are not based on unsupported stereotypes. Bangerter, 46 F.3d at 1503-04.
 
 
 32
 Although we have never explicitly decided the issue, we have held that in order for special safety restrictions on homes for the handicapped to pass muster under the FHAA, the safety requirements must be tailored to the particular needs of the disabled who will reside in the house. Marbrunak, 974 F.2d at 47. We rejected the ordinances at issue in that case because they required
 
 
 33
 nearly every safety requirement that one might think of as desirable to protect persons handicapped by any disability--mental or physical; and all the requirements appl[ied] to all housing for developmentally disabled persons, regardless of the type of mental condition that causes their disabilities or of the ways in which the disabilities manifest themselves.
 
 
 34
 Id. Therefore, in order for facially discriminatory statutes to survive a challenge under the FHAA, the defendant must demonstrate that they are "warranted by the unique and specific needs and abilities of those handicapped persons" to whom the regulations apply. Id.
 
 
 35
 MDSS has not met that burden. MDSS claims that the 1500-foot spacing requirement integrates the disabled into the community and prevents "clustering" and "ghettoization." In addition, it argues that the spacing requirement also serves the goal of deinstitutionalization by preventing a cluster of AFC facilities from recreating an institutional environment in the community.
 
 
 36
 As an initial matter, integration is not a sufficient justification for maintaining permanent quotas under the FHA or the FHAA, especially where, as here, the burden of the quota falls on the disadvantaged minority. See United States v. Starrett City Associates, 840 F.2d 1096, 1102-03 (2nd Cir.1988), cert. denied, 488 U.S. 946, 109 S.Ct. 376, 102 L.Ed.2d 365 (1988); Horizon House, 804 F.Supp. at 695. The FHAA protects the right of individuals to live in the residence of their choice in the community. Marbrunak, 974 F.2d at 45. If the state were allowed to impose quotas on the number of minorities who could move into a neighborhood in the name of integration, this right would be vitiated.
 
 
 37
 MDSS argues that the state is not imposing a quota because it is not limiting the number of disabled who can live in a neighborhood, it is merely limiting the number of AFC facilities within that neighborhood. However, as we have previously noted, disabled individuals who wish to live in a community often have no choice but to live in an AFC facility. Smith & Lee Assoc., 13 F.3d at 931. Alternatively, if the disabled truly have the right to live anywhere they choose, then the limitations on AFC facilities do not prevent clustering and ghettoization in any meaningful way. Thus, MDSS's own argument suggests that integration is not the true reason for the spacing requirements.
 
 
 38
 Moreover, MDSS has not shown how the special needs of the disabled warrant intervention to ensure that they are integrated. MDSS has produced no evidence that AFC facilities will cluster absent the spacing statute. In fact, this statute was not enforced from 1990 to 1993, and MDSS has offered no evidence that AFC facilities tended to cluster during that period.
 
 
 39
 Instead, MDSS simply assumes that the disabled must be integrated, and does not recognize that the disabled may choose to live near other disabled individuals. The result might be different if some municipalities were forcing the disabled to segregate, or cluster, in a few small areas. However, Michigan already prohibits such behavior:
 
 
 40
 In order to implement the policy of this state that persons in need of community residential care shall not be excluded by zoning from the benefits of a normal residential surroundings, a state licensed residential facility providing supervision or care, or both, to 6 or less persons shall be considered a residential use of property for purposes of zoning and a permitted use in all residential zones, including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone.
 
 
 41
 M.C.L. § 125.583b(2) (emphasis added). The only clustering or segregation that will occur, then, is as the result of the free choice of the disabled. In other words, the state's policy of forced integration is not protecting the disabled from any forced segregation; rather, the state is forcing them to integrate based on the paternalistic idea that it knows best where the disabled should choose to live.
 
 
 42
 In contrast, deinstitutionalization is a legitimate goal for the state to pursue. However, MDSS does not explain how a rule prohibiting two AFC facilities from being within 1500 feet of each other fosters deinstitutionalization in any real way. Two AFC facilities 500 feet apart would violate the statute without remotely threatening to recreate an institutional setting in the community. In fact, the spacing requirement may actually inhibit the goal of deinstitutionalization by limiting the number of AFC facilities which can be operated within any given community.
 
 
 43
 MDSS relies again on Familystyle, where both the district court and the Eighth Circuit found that the goal of deinstitutionalization justified facially discriminatory spacing requirements. Familystyle, 923 F.2d at 94, 728 F. Supp. at 1404-05. However, Familystyle is distinguishable from the present case. In Familystyle, the plaintiff already housed 119 disabled individuals within a few city blocks. The courts were concerned that the plaintiffs were simply recreating an institutionalized setting in the community, rather than deinstitutionalizing the disabled.
 
 
 44
 Here, however, Larkin seeks only to house four disabled individuals in a home which happens to be less than 1500 feet from another AFC facility. The proposed AFC facility, and many more like it that are prohibited by the spacing requirement, do not threaten Michigan's professed goal of deinstitutionalization. Because it sweeps in the vast majority of AFC facilities which do not seek to recreate an institutional setting, the spacing requirement is too broad, and is not tailored to the specific needs of the handicapped.[4]
 
 
 45
 In summary, MDSS's justifications do not pass muster under the standard announced in Marbrunak. Therefore, the 1500-foot spacing requirement violates the FHAA and is preempted by it. Accord Horizon House, 804 F.Supp. at 700 (holding that a 1000-foot spacing requirement violates the FHAA).
 
 
 46
 MDSS also has failed to provide an adequate justification for the notice requirements. MDSS merely offers the same justifications for the notice requirements as it offers for the spacing requirements, i.e., integration and deinstitutionalization. Notifying the municipality or the neighbors of the proposed AFC facility seems to have little relationship to the advancement of these goals. In fact, such notice would more likely have quite the opposite effect, as it would facilitate the organized opposition to the home, and animosity towards its residents. See Potomac, 823 F.Supp. at 1296. Furthermore, MDSS has offered no evidence that the needs of the handicapped would warrant such notice. We find that the notice requirements violate the FHAA and are preempted by it.
 
 
 47
 By this holding, we in no way mean to intimate that the FHA, as amended by the FHAA, prohibits reasonable regulation and licensing procedures for AFC facilities. As was stated in Marbrunak, "the FHAA does not prohibit the city from imposing any special safety standards for the protection of developmentally disabled persons." Marbrunak, 974 F.2d at 47 (emphasis in original). Rather, it merely prohibits those which are not "demonstrated to be warranted by the unique and specific needs and abilities of those handicapped persons." Id.
 
 IV.
 
 48
 Finally, the plaintiffs allege, and the district court found, that the challenged statutes violate the equal protection clause of the fourteenth amendment to the United States Constitution. Because the statutes at issue are preempted by the FHAA, we need not reach the equal protection claims. See Fleet Aerospace Corp. v. Holderman, 848 F.2d 720, 724 (6th Cir.1988) ("The general principle in cases involving a constitutional challenge is to avoid striking a statute as unconstitutional if the viable issues in the case may be disposed of on some other reasonable basis").
 
 V.
 
 49
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 For ease of reference, Larkin and MPAS will be referred to collectively as "plaintiffs."
 
 
 [2]
 Although the district court referred to the excessive concentration provisions in M.C.L. §§ 125.583b(4) & 400.716(1), it did not hold that they violated the FHAA or the equal protection clause, and it did not enjoin the enforcement of M.C.L. § 400.716(1)
 
 
 [3]
 As noted above, although the district court mentioned the prohibition against an excessive concentration of AFC facilities, it did not hold that it violated the FHAA or the equal protection clause, and it did not enjoin the enforcement of M.C.L. § 400.716(1). MDSS does not raise this as error on appeal, and the plaintiffs did not file a cross-appeal. Therefore, the prohibition against excessive concentration is not before us
 
 
 [4]
 We express no opinion on whether a more narrowly tailored law prohibiting such a concentration would pass muster under the FHAA