[No. 24491-8-II. Division Two. August 25, 2000.]

VERONICA WILLIAMS-BATCHELDER, *Appellant*, v. LYLE QUASIM, *as Secretary of the Department of Social and Health Services*, ET AL., *Respondents*.

*Howard L. Graham*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Lucretia A. Fishburn, Assistant*, for respondents.

ARMSTRONG, C.J. — Veronica Williams-Batchelder's (Batchelder) family child day care home license was re-

voked when the Department of Social and Health Services (DSHS) learned that she did not live in the home as required by the license. Later, DSHS refused to renew Batchelder's license to operate an adult family home because her family child day care home license had been revoked. Batchelder appeals the nonrenewal of her adult family home license arguing that: 1) the federal Fair Housing Amendments Act preempts state law; 2) the federal Fair Housing Amendments Act and the Washington State Law Against Discrimination require DSHS to reasonably accommodate her by waiving the licensing requirement; 3) equitable estoppel bars DSHS from revoking her adult family home license; and, 4) the administrative code section[1] that allows DSHS to refuse a license because of a previous license revocation exceeds the scope of the enabling legislation, which allows refusal only if the applicant "has a history of significant noncompliance with federal or state regulations, rules, or laws."[2] We find no error and accordingly affirm.

## FACTS

In 1995, Veronica Williams-Batchelder was licensed to operate a family child day care home (day care home) on North Prospect Street. The license for a day care home required that she reside at the facility.[3] Batchelder also maintained a residence with her husband on Galleon Drive.

In the spring of 1995, Batchelder applied for a license to operate a child day care center (day care center) at the

---

[1] Former WAC 388-76-560(8)(i) (1997).

[2] RCW 70.128.060(5).

[3] Former RCW 74.15.020(3)(e) (1994) defines " 'family day-care provider' " as a "licensed day-care provider who regularly provides day care for not more than twelve children in the provider's home in the family living quarters." Former WAC 388-155-010 (1995) defines a " 'family child day care home' " as a " 'family child care home' " or " 'child day care facility, licensed by the state, located in the family abode of the person or persons under whose direct care and supervision the child is placed, for the care of twelve or fewer children,' " and the " 'family abode' " means "a single dwelling unit and accessory buildings occupied for living purposes by a family which provides permanent provisions for living, sleeping, eating, cooking, and sanitation."

North Prospect address. The license for a day care center does not require the licensee to live on site.[4] Batchelder, however, did not have a special use permit as required by Tacoma's zoning ordinance and so DSHS denied the application. Batchelder later applied for and was granted a special use permit in February 1996.[5]

But in July 1995, DSHS revoked Batchelder's day care home license after it verified that she was not living at the North Prospect residence. An Administrative Law Judge (ALJ) later upheld the revocation, as did a review judge.

Meanwhile, as the day care home case was being litigated, Batchelder applied for and was granted a license to operate an adult family home (AFH) at her residence on Galleon Drive.[6] The AFH license expired December 31, 1996. In August 1996, Residential Care Services (RCS), the part of DSHS responsible for conducting the AFH licensing program, was notified that Batchelder's day care home license was revoked.

After her day care home license was revoked, Batchelder applied for a license to open an AFH at the North Prospect address. DSHS denied this application in January 1997 because of the revocation of the day care home license.

On February 18, 1997, Batchelder arranged to have a

---

[4] Former RCW 74.15.020(3)(d) (1994) defines " 'day-care center' " as "an agency which regularly provides care for a group of children for periods of less than twenty-four hours." Former WAC 388-150-010(4) (1995) also defines a " 'child day care center' " as a "facility providing regularly scheduled care for a group of children one month of age through twelve years of age for periods less than twenty-four hours."

[5] Child day care center licenses are issued for a specific number of children and this number may be greater than 12, which is the maximum number of children permitted under a family child care home license. WAC 388-150-190(1). Batchelder originally applied for a special permit to operate a day care center for 25 children. This was denied. Batchelder then applied for a special permit based on care for 14 children. This permit was granted.

[6] This license was issued pursuant to chapter 70.128 RCW. It was initially granted for 2 residents, but later the capacity was increased to 4 residents. Residents in AFHs, by definition, are "in need of personal or special care." RCW 70.128.010(4).

chair lift installed in her Galleon Drive AFH.[7] One week later, DSHS notified Batchelder of its decision to revoke her AFH license for Galleon Drive. This notification was later amended in September 1997 to deny Batchelder's renewal application.

Batchelder contested the denial of her application to renew her AFH license. An ALJ upheld the denial as did an administrative review judge. Batchelder appealed to Thurston County Superior Court, which also upheld the denial of her AFH license renewal.

Central to most of Batchelder's arguments is her assertion that her day care home license was revoked because of a "subsequently corrected zoning code violation." This is incorrect. Several months before her day care home license was revoked, Batchelder applied for a day care center license. But DSHS denied the permit because Batchelder did not have a special use permit as required by Tacoma's zoning ordinance. Batchelder did get a special use permit from Tacoma in February 1996, some six months after her day care home license was revoked. Nevertheless, the only license Batchelder held in July 1995 was for a day care home. And this required that she live at the home. She did not and because of this, her license was revoked.

## ANALYSIS

### I. Standard of Review

Proceedings before the Board of Appeals are governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. In review of such administrative agency action, we apply the standards of the APA directly to the record before the agency.[8] *Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Conclusions of law are reviewed de novo under an error of law standard. *Wilson v.*

---

[7] On February 18, 1997, Batchelder executed an installment note obligating her to pay $3,348 for the chair lift.

[8] *See* RCW 34.05.570(3) for the standards of review.

*Employment Sec. Dep't*, 87 Wn. App. 197, 201, 940 P.2d 269 (1997); *St. Martin's College v. Dep't of Revenue*, 68 Wn. App. 12, 15-16, 841 P.2d 803 (1992). We defer to an agency's interpretation of ambiguous statutes if the matter is within the agency's expertise. *St. Martin's College*, 68 Wn. App. at 16.

## II. Fair Housing Act

■ ■ Batchelder argues that the federal Fair Housing Amendments Act (FHAA), 42 U.S.C. §§ 3601-3631, pre-empts state law regulating AFHs. Batchelder also argues that the FHAA and the Washington State Law Against Discrimination (WSLAD), RCW 49.60.222, require the Department to reasonably accommodate her by waiving former WAC 388-76-560(5) and (8)(i) (1997).[9] The Department contends that state law is not preempted by the FHAA because there is no actual conflict between the state and federal law. The Department further argues that Batchelder is not entitled to reasonable accommodation because she does not meet the test for requiring an accommodation.

The Department is correct that the FHAA does not preempt Washington law. Moreover, reasonable accommodation is not required for two reasons. First, there is no evidence of discrimination "because of a handicap." And second, even if there were a discriminatory impact on the

---

[9] Former WAC 388-76-560 (1997) provides:

(5) The department shall deny a license if an applicant . . . has a history of significant noncompliance with federal or state regulations in providing care or services to vulnerable adults or children. The department shall consider, at a minimum, the following as a history of significant noncompliance requiring denial of a license:

(a) Revocation or suspension of a license for the care of children or vulnerable adults[.]

. . . .

(8) The department may deny, suspend, revoke, or refuse to renew a license if an applicant . . . has:

. . . .

(i) Been denied a license or license renewal to operate a facility that was licensed for the care of children or vulnerable adults[.]

disabled adults in the AFH, a reasonable accommodation claim is inappropriate because the licensing regulation at issue is not applicable to the general population; it is specifically directed at AFHs.

Under the FHAA it is unlawful to:

[D]iscriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap* of —

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added). And for purposes of 42 U.S.C. § 3604(f), discrimination includes: "[A] refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Similarly, under RCW 49.60.222(1)(f), it is unlawful:

To discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling, to any person; or to a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or to any person associated with the person buying or renting.

Batchelder reasons that because she provides housing services to the disabled, she is "associated with" the disabled residents in her AFH and thus protected by the FHAA. Batchelder contends that in denying her a license, DSHS discriminated against her because of her association with disabled residents. And this discrimination impacts her residents. But even if we assume that Batchelder was discriminated against, the FHAA prohibits such discrimination only if it is "because of a handicap." 42 U.S.C. § 3604 (f)(2). Any discrimination against Batchelder was not because of a handicap. Rather, it was because of Batchelder's previous failure to comply with the minimum licensing

requirements for another DSHS license, a family child care home license.

1. Preemption

Batchelder asserts that former WAC 388-76-560(5) and WAC 388-08-425[10] are invalid to the extent that they conflict with the reasonable accommodation language of the FHAA and the WSLAD. Batchelder is correct that if there were an actual conflict between the FHAA and state or local law, the FHAA would preempt any state or local law. *Larkin v. Michigan Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996) (a Michigan statute restricting the location of adult foster care homes was preempted by the FHAA for it discriminated against disabled persons). But, neither chapter 70.128 RCW nor former WAC 388-76-560(5) or WAC 388-08-425 conflict with the FHAA.

The purpose of chapter 70.128 RCW and the regulations promulgated therein is to require that AFH providers meet certain minimum licensing requirements to ensure that the vulnerable adults living in those facilities have their care needs met in a homelike environment. It is a facially neutral statute and sets forth reasonable licensing procedures for AFHs in this state. As the *Larkin* court noted, the FHAA does not prohibit states from imposing reasonable regulations and licensing procedures for adult foster care facilities. *Larkin*, 89 F.3d at 292. Nor does the FHAA prohibit states from imposing special safety standards for the protection of disabled persons. *Marbrunak, Inc. v. City of Stow*, 974 F.2d 43, 47 (6th Cir. 1992) (zoning ordinance requiring extensive safety protections for single family homes housing disabled persons violated the FHAA because the requirements had no correlation to the persons upon which they were imposed and were not tailored to the particular disabilities of the residents). The FHAA merely prohibits standards that are not "demonstrated to be warranted by the unique and specific needs" of the population governed by the standards. *Marbrunak*, 974 F.2d at 47. Batchelder has not shown that DSHS licensing require-

---

[10] WAC 388-08-425 addresses the authority of ALJs.

ments are not "warranted by the unique and specific needs" of the population to be housed in adult family homes.

2. Reasonable Accommodation

Batchelder also argues that the Department should have waived the licensing requirement to reasonably accommodate her. Reasonable accommodation is required by the FHAA if "necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Reasonable accommodation has also been defined as " 'changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual.' " *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995) (quoting *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 462 n.25 (D.N.J. 1992)). Bangerter challenged an ordinance requiring 24-hour supervision and a community advisory committee for a group home for mentally disabled adults, arguing that such a regulation violated the FHAA. And the *Bangerter* court held:

> Bangerter does not challenge an ordinance that is generally applicable, since it is specifically directed at group homes for the handicapped. Under these facts, we conclude that the claim for 'reasonable accommodation' is simply inappropriate and the district court correctly dismissed that claim.

*Bangerter*, 46 F.3d at 1502.

The reasoning in *Bangerter* applies to Batchelder. Batchelder challenges a WAC that is directed at AFHs. By its very nature, former WAC 388-76-560 must impact disabled adults. Batchelder cites no authority where a reasonable accommodation has required a waiver of a licensing requirement specifically directed at protecting disabled housing residents. Furthermore, former chapter 388-76 WAC has no waiver provision. This is unlike other DSHS licensing chapters that contain waiver regulations, including: WAC 388-150-050, waivers for child day care centers; WAC 388-155-050, waivers for child day care homes; and, WAC 388-160-030, exceptions for overnight

youth shelters. Under these other regulations the Department may waive specific requirements if good cause is shown.

That is precisely what is missing in Batchelder's case. The purpose of chapter 70.128 RCW is to enable disabled adults to live in humane, safe, and homelike environments, and to establish standards for regulating these AFHs. RCW 70.128.005, .007. The Department used legitimate State power to regulate AFHs. *See Marbrunak*, 974 F.2d at 47. Moreover, Batchelder does not seek reasonable accommodation of a general rule to make it less difficult for the disabled; rather, she seeks to have the Department disregard the state licensing requirements, the intent of which is to protect the disabled. Thus, Batchelder's reasonable accommodation argument fails.

## III. Equitable Estoppel

Batchelder contends that the Department should be equitably estopped from denying her application to renew her AFH license. Even applying equitable estoppel, Batchelder's claim fails for lack of reasonable reliance.

■ Under *Kramarevcky v. Department of Social & Health Services*, 122 Wn.2d 738, 863 P.2d 535 (1993), equitable estoppel applies to state agencies. A claim of equitable estoppel against a government agency requires clear, cogent, and convincing evidence of (1) an admission, statement, or act by the government inconsistent with its later claim; (2) a party acting in reliance on the admission, statement, or act; (3) injury to the relying party if the government were allowed to contradict or repudiate its prior admission, statement, or act; (4) the necessity of estoppel to prevent a manifest injustice; and (5) no impairment of governmental functions if estoppel is applied. *Kramarevcky*, 122 Wn.2d at 743-44. A party claiming estoppel must show reasonable reliance. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992).

■ Here, all the elements of equitable estoppel are arguably met except for reasonable reliance. Batchelder

argues that the Department's silence after the family child care home license was revoked may be considered an omission that is inconsistent with its later refusal to renew her license. And, continues Batchelder, in reliance on the Department's failure to act, she purchased a chair lift in February 1997 for the AFH at Galleon Drive. But Batchelder cannot show that this purchase was reasonable. Her AFH license expired on December 31, 1996, and the application for renewal had not yet been approved. Most importantly, her application for an AFH license for the Prospect Street address had previously been denied because of the day care license revocation. Thus, Batchelder was aware when she purchased the chair lift that her license was in jeopardy because of the previous revocation.

## IV. Error of Law

Batchelder contends that applying former WAC 388-76-560(5)(a) and (8)(i) to this case exceeds the scope of the enabling legislation, RCW 70.128.060(5). We review the interpretation of statutes and implementing regulations under an error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). Against this standard, we conclude that the Department did not erroneously interpret or apply the law. In matters of statutory construction, the court may substitute its judgment for that of the agency, although substantial weight is accorded to the agency's interpretation if the subject matter is within the agency's expertise. *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 616, 965 P.2d 626 (1998) (citations omitted).

Here, DSHS is charged with adopting rules and standards to carry out the purpose of the AFH licensing chapter. RCW 70.128.040(1). RCW 70.128.060(5) provides that the Department shall not issue a license if the provider "has a history of significant noncompliance with federal or state regulations, rules, or laws in providing care or services to vulnerable adults or to children." RCW 70.128-.060(5) does not define "history of significant noncompli-

ance." DSHS defined the phrase in former WAC 388-76-560(5)(a) to include "[r]evocation or suspension of a license for the care of children or vulnerable adults." Revoking a license to operate a facility that cares for either children or vulnerable adults for failure to comply with the minimum licensing requirements demonstrates "a history of significant noncompliance." Batchelder had her license to care for children revoked for failing to comply with the terms of the license. She did not live on the premises as required. And it was this license revocation that DSHS considered when reviewing her renewal application under RCW 70.128.060(5) and former WAC 388-76-560(5). We conclude that former WAC 388-76-560(5) does not exceed the scope of its enabling statute, RCW 70.128.060(5).

## CONCLUSION

Chapter 70.128 RCW is not preempted by the FHAA and Batchelder is not entitled to a waiver of former WAC 388-76-560 as a reasonable accommodation. Nor does former WAC 388-76-560 exceed the scope of RCW 70.128-.060. Finally, DSHS is not estopped from enforcing the licensing statute because Batchelder cannot show reasonable reliance. We uphold DSHS's decision not to renew Batchelder's AFH license.

Affirmed.

MORGAN and SEINFELD, JJ., concur.