# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of | ) |
| | ) No. 70411-7-I |
| MARIANA GLIGOR, dba EVERGREEN | ) |
| SEASONS ADULT FAMILY HOME, | ) DIVISION ONE |
| | ) |
| Respondent, | ) UNPUBLISHED OPINION |
| | ) |
| v. | ) |
| | ) |
| STATE OF WASHINGTON | ) |
| DEPARTMENT OF SOCIAL AND | ) |
| HEALTH SERVICES, | ) |
| | ) FILED: October 20, 2014 |
| Appellant. | ) |

TRICKEY, J. — An agency's determination to revoke an adult family home license will not be sustained where the basis of the revocation lies in the alleged poor care and management of the provider, such as the provider's failure to protect residents from the home's dog, where two of those same patients and the dog are simply relocated to another home licensed and operated by the same provider. Such a decision is arbitrary and capricious.

## FACTS

An adult family home (AFH) is "a residential home in which a person or persons provide personal care, special care, room, and board to more than one but not more than six adults who are not related by blood or marriage to the person or persons providing the services." RCW 70.128.010(1). The Department of Social and Health Services (DSHS) licensed Mariana Gligor to operate two adult family homes. Evergreen Adult Family Home (Evergreen) opened in 2000 and

Evergreen Seasons Adult Family Home (ES) opened in 2007.[1] The license for ES states that the home has a specialty in developmental disabilities, dementia, and mental health.[2] On April 15, 2010, DSHS gave Gligor formal notice of a stop placement of admissions and the revocation of her license for ES.[3]

DSHS determined that Gligor had violated six separate administrative regulations:[4]

**WAC 388-76-10020(1) License—Ability to provide care and services.** [(Adult family home provider must have the understanding, ability, emotional stability and physical health to meet the needs of vulnerable adults.)]

The licensee lacked emotional stability and understanding to provide care to two residents when one resident was reprimanded and humiliated by the licensee and another resident was told she played with the facility dog at her own risk after the dog bit the resident. This failure placed all residents at risk for unmet needs.

**WAC 388-76-10220(2)(3) Incident Log.** [(Provider must keep a log of accidents, incidents affecting a resident's welfare, and any injury to a resident.)]

The licensee failed to ensure she kept an incident log as required that documented when one resident was bitten by the facility dog. This failure resulted in the facility having no system in place to track accidents or incidents.

**WAC 388-76-10230(2) Pets.** [(An animal must have a suitable temperament, be clean and healthy, and otherwise pose no significant health or safety risks to any resident.)

The licensee failed to ensure three residents were not exposed to a facility dog after the dog bit a resident and urinated/defecated in the home, including on a resident's bed. This failure resulted in harm for one resident who was bitten by the dog and placed the residents at

---

[1] Office of Administrative Hearings Transcript of Proceedings (TR) at 25; Administrative Record (AR) at 392, Exhibit (Ex.) D-1.
[2] Findings of Fact 1; Ex. D-1 (License No. 750410).
[3]AR at 294-197.
[4] AR at 294-95.

risk for additional dog bites. In addition, this failure resulted in the residents having to live in unsanitary conditions.

**WAC 388-76-10380(2) Negotiated care plan—Timing of reviews and revisions.** [(A negotiated plan must be reviewed and revised when the plan or parts of the plan no longer address resident's needs and preferences.)]

The licensee failed to ensure two residents had their care plans updated when their conditions changed or incidents occurred requiring an update for care and services. This failure placed the residents at risk for unmet needs.

**WAC 388-76-10400(2)(3)(a)(b) Care and services.** [(Provider must ensure each resident receives necessary care and services to help resident reach highest level of physical, mental, and psychosocial well-being consistent with resident choice, current functional status, and potential for improvement or decline. Provider must ensure the care and services are provided in a manner that actively supports each resident's quality of life and the safety of each resident.)]

The licensee failed to ensure two residents received appropriate care and services in a manner that actively supported and improved their quality of life. The licensee's delivery of inappropriate care and services related to the residents' diagnoses resulted in harm for one resident, who suffered mental anguish and a sudden involuntary discharge and harm for another resident, who sustained a dog bite and did not have her mental health issues appropriately addressed.

**WAC 388-76-10615(2)(a)(3)(6) Resident rights—Transfer and discharge.** [(Before a home transfer or discharge, a resident must attempt through reasonable accommodations to avoid transfer unless agreed to by the resident. The home must give notice of the transfer at least 30 days before resident is transferred or discharged and give the resident preparation and orientation to ensure safe and orderly transfer from the home.)]

The licensee failed to ensure one resident received an appropriate discharge from the adult family home. This failure resulted in sudden, disorderly discharge.

Gligor contested the revocation. In October 2010, an Administrative Law Judge (ALJ) held a four-day administrative hearing, receiving testimony from 19

3

witnesses and reviewing 24 exhibits as well as written closing arguments and reply arguments.[5] Counsel represented Gligor at that hearing.

ALJ Andrea Conklin issued an initial order that upheld DSHS's violations with the exception of having an unclean dog and no incident log.[6] The ALJ found that Gligor's violation of the administrative regulations cited by DSHS placed the residents of ES in danger and revocation was appropriate.

Gligor appealed the ALJ's decision to the DSHS Board of Appeals. The Board of Appeals issued a 42-page written decision upholding the ALJ's decision with slight modifications. Gligor appealed that decision to the superior court, which upheld most of the violations, but found that the remedy imposed was arbitrary and capricious. DSHS appeals.

## ANALYSIS

### Standard of Review

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of final agency action. RCW 34.05.510; Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing an agency action, this court sits in the same position as the superior court, applying the standards of the APA directly to the record before the agency. Tapper, 122 Wn.2d at 402. "The findings of fact relevant on appeal are the reviewing officer's findings of fact—even those that replace the ALJ's." Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 19, 256 P.3d 339 (2011) (citing Tapper, 122 Wn.2d at 406).

---

[5] AR at 179; TR at 1-733.
[6] AR at 179-191.

Conclusions of law are reviewed de novo under an error of law standard. Wilson v. Emp't Sec. Dep't, 87 Wn. App. 197, 201, 940 P.2d 269 (1997).

A reviewing court defers to an agency's interpretation of ambiguous statutes if the matter is within the agency's expertise. Williams-Batchelder v. Quasim, 103 Wn. App. 8, 13-14, 19 P.3d 421 (2000) (citing St. Martin's Coll. v. Dep't of Revenue, 68 Wn. App. 12, 15-16 841 P.2d 803 (1992)). This court grants relief from the reviewing judge's order if the "order is not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e). Relief will also be granted where the "order is arbitrary or capricious." RCW 34.05.570(3)(h)(i).

Arbitrary and Capricious

RCW 70.128.160 authorizes DSHS to impose a remedy against adult family home providers for noncompliance with applicable statutes or regulations. These remedies include civil penalties, "stop placement" of new residents, or suspension or revocation of a license. RCW 70.128.160(2)(c)-(g); WAC 388-76-10940. DSHS is required to impose a remedy when violations are repeated, uncorrected, pervasive, or present a threat to the health, safety, or welfare of residents. WAC 388-76-10945. However, DSHS's choice of remedy is discretionary and may include one of the following:

    (1) Denial of an application for a license;
    (2) Impose reasonable conditions on a license;
    (3) Impose civil penalties;
    (4) Order stop placement; and/or
    (5) Suspension or revocation of a license.

WAC 388-76-10940.

This court reviews legal issues de novo, including whether a decision is arbitrary and capricious. Dodge City Saloon, Inc. v. Wash. State Liquor Control Bd., 168 Wn. App. 388, 395, 288 P.3d 343, rev. denied, 176 Wn.2d 1009 (2012). Here, even if DSHS proved each and every allegation, the remedy of license revocation under these circumstances was arbitrary and capricious.

Arbitrary and capricious actions are those that disregard the facts and circumstances, and are unreasoned and without consideration. Heinmiller v. Dep't of Health, 127 Wn.2d 595, 609, 903 P.2d 433, 909 P.2d 1294 (1995). The right to be free from arbitrary and capricious actions is a fundamental right. Williams v. Seattle Sch. Dist. No. 1, 97 Wn.2d 215, 221-22, 643 P.2d 426 (1982). RCW 70.128.160(2)(b)-(f) gives the agency authority to impose reasonable conditions, civil penalties, or a license suspension as well as license revocation.

The APA requires an adjudicative proceeding for revocation, suspension, or modification of a license. RCW 34.05.422(1)(c). As noted in Conway v. Wash. State Dep't of Soc. & Health Servs., 131 Wn. App. 406, 417, 120 P.3d 130 (2005), such a decision is discretionary and capable of being reviewed. Although the court cannot substitute a different remedy, it can determine if the remedy is arbitrary and capricious.

The question we are faced with here, is not whether there was substantial evidence to support the violations, but rather whether the remedy applied is arbitrary and capricious, even where we find that sufficient evidence supported the reviewing judge's decision.

The DSHS adult family home licenser, Estelle Sylvester, testified that DSHS permitted the residents to move to Evergreen, the other home operated by Gligor.[7] At the time, Gligor had no residents at Evergreen, and had not had any for two years, but maintained her license there.[8] Sylvester conducted two full inspections, two follow-up inspections, a complaint investigation, and six monitoring visits of the two homes.[9] Sylvester testified that the residents from ES were relocated to Evergreen. Sylvester had no concern with the moving of the residents to Evergreen. Her only concern was that the residents be informed and that they receive a 30-day notice and an opportunity go visit the home to see if it would be comfortable.[10]

In August 2010, Sylvester conducted a full inspection of the Evergreen home. The resident whom the dog had bitten, really liked the dog.[11] The other remaining resident told Sylvester that the dog did not bother him.

DSHS argues that it did not have authority to prevent the relocation of residents to Evergreen because the license is for the home, not the provider, and there were no enforcement actions pending against Evergreen. However, WAC 388-76-10985(2) provides:

> If violations in an adult family home are of such nature as to present a serious risk or harm to residents of other homes operated by the same provider, the department may impose remedies on those other homes.

---

[7] TR at 296.
[8] TR at 314.
[9] TR at 260.
[10] TR at 295.
[11] TR at 315-16.

The availability of other, more appropriate sanctions, makes the remedy imposed all the more arbitrary and capricious. If DSHS truly found the violations presented a serious risk of harm to the remaining two residents, those residents should never have been permitted to move with the same provider. That DSHS did not think so is evidenced by its permitting the residents to be moved there.

Accordingly, even though the record contained sufficient evidence to support the reviewing judge's decision as to the violations, we agree with the superior court that the remedy imposed was arbitrary and capricious.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_Trickey, J._

WE CONCUR:

_____                    _____, C.J.