[No. 43778-0-I.   Division One.   July 17, 2000.]

OSCAR'S, INC., *Appellant*, v. THE WASHINGTON STATE LIQUOR CONTROL BOARD, *Respondent*.

*David R. Osgood*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Stephen T. Reinmuth* and *F. Neil Gorrell, Assistants*, for respondent.

WEBSTER, J. — Appellant Oscar's, Inc., challenges Respondent Washington State Liquor Control Board's order revoking Oscar's liquor license. The Board revoked Oscar's license on the grounds that the licensee knowingly permitted illegal activity, specifically, possession and distribution of illegal narcotics, on the licensed premises. We hold that the Liquor Board applied an incorrect legal standard for "knowingly permitted." We reverse the Board's finding and remand for application of the standard we set forth herein, requiring the Board to make a finding analogous to the criminal definition of "knowingly" as stated in RCW 9A.08.010(1)(b).

## BACKGROUND

Oscar and Barbara McCoy have owned and operated a restaurant and nightclub for over 20 years. Since 1986 their establishment, Oscar's II, has been located at 2051 East Madison Street, Seattle. Apparently, changes in the neigh-

borhood around 1989 brought changes in Oscar's clientele. By all accounts, Oscar's is located in an area that has been drug infested throughout the 1990s.

The McCoys have a very good history of compliance with liquor laws. They also have a history of cooperation with law enforcement, especially in the early 1990s, when they allowed agents of the federal Drug Enforcement Agency to use their premises and also cooperated with Seattle police in a no-trespass policy, with Mr. McCoy testifying regularly on behalf of the State in resulting criminal trials. The McCoys apparently enjoyed a good relationship with several of the beat officers assigned to the area during this time.

In late 1994, the McCoys met with Seattle police to discuss implementation of a drug elimination plan. This plan consists of 15 suggestions for tavern and nightclub owners to reduce drug activity on their premises. McCoy implemented some of the suggestions but considered others infeasible.

In late 1995 and the first half of 1996, the Seattle Police Department targeted Oscar's to determine whether drugs were being sold on the premises. Confidential informants made numerous controlled undercover drug buys in Oscar's. No arrests were made and the McCoys were not informed or provided with the identities of those selling drugs on the premises. On one occasion, a police officer observed a man rolling a marijuana cigarette in the men's washroom, and on another occasion a police officer participated with a confidential informant in making a controlled undercover buy in the women's washroom.

In August 1997, Oscar's liquor license was suspended for 30 days under an emergency order of suspension. Based on the undercover buys made in 1997, the Board charged Oscar's with violations of WAC 314-16-120(4), which prohibits a licensee from knowingly permitting illegal activity on the licensed premises.[1] After a hearing, the Administra-

---

[1] The Board's complaint also included a charge that the McCoys violated WAC

tive Law Judge (ALJ) concluded that the evidence did not show by a preponderance that the McCoys knowingly permitted illegal activity on the licensed premises and dismissed the complaint. The Board disagreed and revoked Oscar's license. The superior court affirmed the Board's conclusion that the McCoys violated WAC 314-16-120(4), but reversed the Board's conclusion that the McCoys violated WAC 314-16-120(2). The superior court remanded for a determination of whether the license revocation was appropriate in light of its reversal in part. What happened on remand is not a part of our record, but apparently the Board did not change its mind concerning the revocation because it eventually issued Oscar's a *new* liquor license that included conditions the original license did not contain.

Oscar's filed a motion in this court for discretionary review of the superior court's ruling upholding the Board's finding that Oscar's knowingly permitted illegal activity on the licensed premises, specifically, narcotics activity. (Apparently, Oscar's filed for discretionary review *before* the Board issued any redetermination on the revocation.) The commissioner issued an order stating that "it is unnecessary to decide if review is warranted because the superior court decision is appealable of right pursuant to RCW 34.05.526."[2]

## ANALYSIS

### A.   The Superior Court's Ruling Is Appealable

The Liquor Board argued for the first time on appeal[3] that this court does not have jurisdiction because Oscar's

---

314-16-120(2). The superior court reversed the Board's conclusion that the McCoys violated this provision, and because the Board did not appeal that ruling, it is not before us.

[2] RCW 34.05.526 states: "An aggrieved party may secure appellate review of any final judgment of the superior court under this chapter [the Administrative Procedure Act] by the supreme court or the court of appeals. The review shall be secured in the manner provided by law for review of superior court decisions in other civil cases."

[3] "A party or the court may raise at any time the question of appellate court jurisdiction." RAP 2.5(a); *see also Skagit Surveyors & Eng'rs v. Friends of Skagit*

"appealed the wrong order", that is, that the superior court order that Oscar's appealed is not appealable because the trial court ordered remand and Oscar's did not wait for the Board's determination on remand and then appeal *that* determination to the superior court, and then to this court.

The Board failed to submit written authority for its position, as we suggested, but the Board's argument as we understand it is flawed in that it lumps the superior court's rulings together: the Board's attorney stated in oral argument that the superior court remanded "the case" to the Board. We disagree. The superior court remanded for reconsideration only the penalty imposed. The superior court did not remand the question whether the record supported the Board's finding that Oscar's violated WAC 314-16-120(4), prohibiting a licensee from knowingly permitting illegal activity on the licensed premises. The only question on remand was whether the same penalty, revocation of the license, was warranted in light of the court's reversal of the Board's finding that Oscar's violated 314-16-120(2). Because the superior court did not remand for reconsideration of the findings, the superior court's ruling was final in that regard. The appeal of the superior court's final ruling was not affected by what happened on remand regarding the penalty. Even had the Board found on remand that the penalty was inappropriate and vacated the revocation of the license, the superior court's ruling upholding the violation of WAC 314-16-120(4) would still be appealable. The case would not have been moot because the violation that was upheld would go into Oscar's compliance history, possibly affecting penalties for future violations. Thus, we agree with the commissioner's conclusion that the superior court's ruling upholding the Board's finding that Oscar's violated WAC 314-16-120(4) is appealable.

B.   The Case Is Not Moot

A case is moot if the court cannot provide either the relief originally sought or any effective relief. *See Dioxin/*

*County,* 135 Wn.2d 542, 556, 958 P.2d 962 (1998) (any party to an appeal may raise the lack of subject matter jurisdiction at any time).

*Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 350, 932 P.2d 158 (1997). The Board argues that the case is moot because Oscar's was granted a new liquor license in July 1999 and, thus, this court can no longer provide effective relief. Oscar's responds that the case is not moot because: (1) the new license contains conditions that the old one did not; and (2) the case affects Oscar's ability to pursue a tort claim for damages, first, because Oscar's is required to exhaust its administrative remedies before bringing an action for damages, and second, because the administrative findings of fact and conclusions of law may be given preclusive effect in a subsequent action for damages. It argues further that even if technically moot, the case should be heard because the issues are likely to recur and involve matters of continuing and substantial public interest.

The conditions placed upon the newly issued license are:

1. All employees must have valid identification and Oscar's, Inc. must request a Police Department criminal records check of all employees. It is Oscar's, Inc.'s responsibility to obtain authorization of employees or prospective employees and to contact the Seattle Police Department Records Division on the Fourth Floor of the Public Safety Building to obtain this information.

Oscar's may temporarily employ personnel contingent on a successful records check. It is the Seattle Police Department's responsibility to process the records check and respond within ten days. Employees of Oscar's II may not have any drug felony or serious violent offense convictions as defined in former RCW 9.94A.030(18) (including RCW 69.50.401(d), (23), (27)(b) or (31) [sic] within five years of application for employment at Oscar's II.

2. Oscar's, Inc. will employ two or more properly bonded and licensed security personnel during times when evening activities or special events are offered. Security personnel must wear clothing that clearly identifies them as security. Security personnel shall be responsible for watching for potential criminal and drug activity within the business or parking lot of Oscar's II. Security shall screen customers using the walk-through

metal detector during evening activities.

3. Oscar's Inc. will enter into and maintain an updated criminal trespass agreement with the Seattle Police Department. Oscar's, Inc. shall maintain a criminal trespass list of persons who have been [sic] trespassed and are not authorized to be inside Oscar's II or in the parking lot. This list will be made readily available for review by police officers upon request.

4. Oscar's, Inc. will post a sign near the entrances to Oscar's II stating "No loitering". No drug activity allowed - 911 will be called. [sic]

5. Oscar's, Inc. will restrict payphones to customer and employee use, and payphones will not accept incoming calls.

These conditions make mandatory several of the conditions for which voluntary compliance was requested in the drug elimination plan given to the McCoys by the police department in 1994. We find that these conditions are sufficient to distinguish the old license from the new and find that the question before us is not moot. The relief that may potentially flow from this court's reversal of the Board's decision would be a license without the added conditions. Furthermore, as mentioned above, the Board's finding that Oscar's violated WAC 314-16-120(4) becomes part of Oscar's compliance history, possibly affecting future penalties. *See* WAC 314-12-300 through 314-12-320. Thus, reversal potentially affords Oscar's a cleaner compliance history.[4]

C.  The Board Applied an Incorrect Legal Standard

Oscar's argues that the Board misinterpreted the phrase "knowingly permit" in WAC 314-16-120(4) and consequently applied an improper legal standard to the facts of his case.

The administrative rule at issue provides:

No licensee shall engage in, or knowingly permit any employee or other person to engage in, conduct on the licensed premises or on property adjacent to the licensed premises under the

---

[4] Because we find the case is not moot due to the conditions in the new license, we need not address Oscar's other arguments refuting mootness.

control of the licensee which is prohibited by any portion of Titles 9, or 9A, or 69 RCW.

WAC 314-16-120(4).

After hearing the evidence and arguments presented by the parties at a two-day hearing, the ALJ concluded that the evidence did not show by a preponderance that the McCoys knowingly permitted the sale of drugs in Oscar's: "[t]he record does not show the McCoys to be 'looking the other way' or 'winking' at the criminal activity." Clerk's Papers at 39. The ALJ dismissed the complaint.

Based on the record before the ALJ, the Board concluded that McCoy knowingly allowed illegal drug activity on the premises in violation of the rule. The Board's conclusion was based on: (1) the evidence showing that numerous undercover controlled drug buys took place inside Oscar's; (2) a police officer's testimony that he witnessed a man rolling a marijuana cigarette in the middle of the men's washroom, making no attempt to hide his actions; (3) a police officer's testimony that he witnessed his confidential informant make a controlled drug buy in the women's washroom; and (4) McCoy's failure "to make a serious effort" to comply with the 15-step drug-elimination plan as suggested by the police. The Board found that McCoy was put on notice by the police and the Board on several occasions of the narcotics activity and that the Board's emergency suspension provided further notice of the severity of the drug problem at Oscar's. The Board found that McCoy was not credible when he claimed that he had not seen a drug transaction inside the establishment. The Board concluded that "Mr. McCoy was in fact 'looking the other way' at criminal activity, and knowingly allowing narcotics activity at Oscar's II."

We review the administrative ruling here under the Administrative Procedure Act (APA) and will reverse if the Board "erroneously interpreted or applied the law." RCW 34.05.570(3)(d). Oscar's shoulders the burden of showing that the Board was in error. See RCW 34.05.570(1)(a).

Oscar's argues that the Board ignored the word "know-

ingly" and erroneously held that "knowingly permitted" is satisfied by "actual or constructive knowledge of the circumstances which would foreseeably lead to the prohibited activity." *Reeb, Inc. v. Liquor Control Bd.*, 24 Wn. App. 349, 353, 600 P.2d 578 (1979).[5] At issue in *Reeb* was the interpretation of a rule as applied to physical contact between performing dancers and customers. *See id.* The rule placed a prohibition on encouraging or permitting "any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person." Former WAC 314-16-125(3) (1979). The *Reeb* court held that "[t]he word 'permit' as used in the regulation does not imply that the licensee must have permanently sanctioned the prohibited act; it refers to the licensee's actual or constructive knowledge of the circumstances which would foreseeably lead to the prohibited activity." 24 Wn. App. at 353. Thus, "permit" does not mean that the licensee must encourage or sanction prohibited activity; apparently "permit", as *Reeb* and the current Board interprets it, means mere acquiescence to or *failure to prevent* not only prohibited activity but also *circumstances* of which the licensee has at least constructive knowledge that would *foreseeably lead to the prohibited activity.*

■ We distinguish the context of *Reeb* from the present case. First we see a factual distinction: in *Reeb*, the prohibited activity was physical contact between the dancers and patrons—rather hard for the proprietor to miss; here, the prohibited activity at issue is drug dealing—somewhat more elusive where the drug buys were for small, easily concealed amounts of drugs. Second, we note the difference in the wording of the regulation: in the rule in *Reeb*, "permit" was not qualified by "knowingly", as it is here. We do not think application of the *Reeb* standard is appropriate in the present context. In this case, "knowingly permit"

---

[5] The Board did not expressly rely on *Reeb* when considering McCoy's violation of WAC 314-16-120(4), rather, it discussed *Reeb* when considering McCoy's violation of WAC 314-16-120(2), which is not at issue here. But based on our interpretation of the Board's reasoning, we construe the Board's ruling on the WAC 314-16-120(4) violation as applying the *Reeb* standard.

requires more than awareness of circumstances which could foreseeably lead to the prohibited drug transactions.

We hold that "knowingly permit" in WAC 314-16-120(4) requires a showing analogous to the criminal definition of "knowledge" or "knowingly", which states:

(b) KNOWLEDGE. A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

This is not the standard that the Board applied. The Board based its conclusion on the bare fact that undercover buys took place, inferring that McCoy had constructive knowledge of illegal activity. The Board's conclusion was also based in part on McCoy's failure to make a "serious" effort to comply with the drug elimination plan. The Board's conclusion was that McCoy failed to prevent the *circumstances* that *foreseeably lead to* prohibited drug activity. That is, according to the Board, he failed to take steps that, in the Board's opinion, would have reduced the drug problem. While the Board's assertion that McCoy was "looking the other way" when criminal activity occurred might imply that it found that McCoy knew of specific illegal conduct and turned a blind eye, it appears to us, judging from the record, that this is not the standard that the Board applied.

Under the standard set forth in the criminal definition as it is applied to WAC 314-16-120(4), the licensee must be aware of the facts of illegal activity or possess information from which a reasonable person would infer the facts of illegal activity. The Board has not demonstrated that this standard was met here. As the superior court's unchallenged finding stated:

Finding No. 20 to the effect that Mr. McCoy or his employees necessarily must have known of all the narcotics activity is not

supported by the record. ALJ Heller found that the confidential informant was not credible when she testified to the involvement of Oscar's employees, and that Mr. McCoy and his employees were credible when they denied knowledge of specific transactions. The Board's finding is based on speculation and it disregards the ALJ's credibility determinations, even though the ALJ observed the demeanor and heard the voices of the witnesses and the Board did not.

Furthermore, it is not enough that the licensee has knowledge of circumstances that would *foreseeably lead to* illegal activity. Thus, the Board may not be upheld, as the superior court found, on the grounds that "[t]he licensee knew or should have known that unless additional steps were taken, drug activity would continue on the premises." The superior court's conclusion that "[b]y failing to take these steps, the licensee knowingly permitted unlawful drug activity" is incorrect under the standard we set forth.

We remand to give the Board an opportunity to apply the standard enunciated herein to the facts appearing in this record.[6]

## CONCLUSION

We vacate the Board's order revoking Oscar's license, reverse the Board's finding that Oscar's violated WAC 314-16-120(4), and remand for application of the correct legal standard as set forth in this opinion.[7]

AGID, C.J., and COX, J., concur.

---

[6] Because we find that the Board applied an incorrect legal standard, we need not address Oscar's remaining theories for reversal of the Board's decision.

[7] Appellant's request for attorney fees, made after oral argument, is untimely and is thus denied. *See* RAP 18.1(b).