[No. 41454-6-II.   Division Two.   May 15, 2012.]

DODGE CITY SALOON, INC., *Petitioner*, v. THE WASHINGTON STATE LIQUOR CONTROL BOARD, *Respondent*.

390

*Ben Shafton,* for petitioner.

*Robert M. McKenna, Attorney General,* and *Gordon P. Karg, Assistant,* for respondent.

¶1 QUINN-BRINTNALL, J. — Dodge City Saloon Inc. appeals a Washington State Liquor Control Board's (Liquor Board) final order finding that it allowed an underage person into an area off limits to persons under the age of 21. Dodge City asserts that because the Liquor Board's compliance checks are administrative inspections subject to U.S. Const. amend. IV and Wash. Const. art. I, § 7 warrant requirements, the administrative law judge (ALJ) should have

suppressed all evidence discovered as a result of the Liquor Board's warrantless inspection of Dodge City. Dodge City further argues that the ALJ should have dismissed the Liquor Board's complaint under the doctrines of entrapment and outrageous conduct and that the ALJ erred when it denied its motion for continuance. Last, Dodge City asserts it is entitled to attorney fees. We hold that because the Liquor Board's compliance check in this case was not a search, Dodge City cannot challenge it under either U.S. Const. amend. IV or Wash. Const. art. I, § 7. We also hold that Dodge City may not assert an entrapment or outrageous conduct defense in a civil administrative proceeding and that the ALJ did not err when it denied Dodge City's motion for continuance. We deny Dodge City's request for attorney fees and affirm.

## FACTS

¶2 On October 10, 2008, the Liquor Board filed a complaint alleging that Dodge City, a nightclub in Vancouver, Washington, "allowed a person under the age of twenty-one to remain in a licensed premise off-limits to persons under the age of twenty-one, contrary to [former] RCW 66.44-.310(1)(a) [(2007)] and WAC 314-11-020(2)."[1] Administrative Record (AR) at 551. Generally, the Liquor Board issues licenses to businesses throughout Washington in accord with ch. 66.24 RCW. The Liquor Board monitors its licensees through a program of compliance checks wherein investigatory aides under the age of 21 attempt to enter a licensed establishment and make a controlled liquor purchase from the bar. A commissioned liquor enforcement officer supervises the compliance checks.

---

[1] Former RCW 66.44.310(1)(a) provides that it is a misdemeanor "[t]o serve or allow [a minor] to remain in any area classified by the board as off-limits to any person under the age of twenty-one years."

WAC 314-11-020(2) provides that "licensees or employees may not allow persons under twenty-one years of age to remain in any premises or area of a premises classified as off-limits to persons under twenty-one."

¶3 The basis of the Liquor Board's complaint at issue arose during a series of compliance checks of several establishments that began on May 16. On that evening, C.M., an investigative aide then 17 years old, carried his Washington State identification card and his vertical driver's license.[2] Both cards showed his date of birth as in October 1990. Liquor enforcement officer Marc Edmonds searched C.M. before the compliance check, mistakenly saw only the identification card, and allowed C.M. to proceed. Under the supervision of several liquor enforcement officers, including liquor enforcement officer Diana Peters, who was waiting inside the bar to observe in an undercover capacity, C.M. presented his identification card to Dodge City's bouncer, Jeffrey Hilker. Hilker inspected the card with a black light, told C.M. to pay a five dollar cover fee, and stamped C.M.'s hand. C.M. entered Dodge City and remained inside for three minutes.

¶4 After C.M. left Dodge City, liquor enforcement officer Almir Karic went inside to serve an administrative violation notice (AVN) on the bartender, Erick Gill. The AVN charged Hilker with violating former RCW 66.44.310(1)(a), which prohibits allowing a person under 21 years old into an area considered off limits. Karic noted in the AVN summary that Hilker stated he thought C.M.'s identification card was a horizontal license and had a different birthday.

¶5 Dodge City made pretrial motions to suppress all evidence and testimony by the Liquor Board, to dismiss the Board's entire case, and to continue. The ALJ denied the motions. During the Liquor Board's formal hearing, Dodge City argued that C.M. looked "deceptively mature" and that "the [Liquor] Board was essentially attempting to entrap the Licensee." AR at 503. The ALJ rejected Dodge City's entrapment argument, reasoning that

[C.M.'s] firsthand testimony was that Mr. Hilker not only looked at his valid identification card, but also placed it under

[2] Washington State issues vertical driver's licenses to individuals under 21 years old.

the black light of a machine especially designed to read such identification. The fulcrum point upon which the [Liquor] Board's key argument rests is that card itself stated clearly when [C.M.] would turn 18, which also clearly meant that at the time he was not 21 either. Irrespective of how [C.M.] looked, his valid identification card indicated that he was too young to be granted admittance.

AR at 505. The ALJ then entered an initial order in favor of the Liquor Board, concluding that the Liquor Board had met its burden to "establish by a preponderance of the evidence that: a) the Licensee or an employee, b) allowed, c) a person under the age of twenty-one, d) to remain, e) in an off-limits section of the premises." AR at 504. The ALJ affirmed the AVN, sustained the complaint, and suspended Dodge City's license for seven days.

¶6 Dodge City timely appealed, but the Liquor Board Enforcement Division did not timely respond. Thus, in making its determination, the Liquor Board's appellate division relied on the Liquor Board's briefing submitted before entry of the initial order. On December 29, 2009, the Liquor Board's appellate division issued a final order affirming and adopting the ALJ's initial order, except to correct apparent scrivener's errors. The Liquor Board suspended Dodge City's liquor license privileges for seven days, from February 16, 2010 until February 23, 2010.

¶7 Dodge City appealed the Liquor Board's final order in Clark County Superior Court, which affirmed on October 14, 2010. Dodge City timely appeals.

## DISCUSSION

¶8 Dodge City argues that because the Liquor Board's May 16, 2008 compliance check violated the Fourth Amendment and article I, section 7, the ALJ erred in denying its motion to suppress all evidence and testimony from state actors. Dodge City further argues that the ALJ erred in denying its motions to dismiss the Liquor Board's com-

plaint under the doctrines of entrapment and outrageous conduct, and its motion for continuance. Last, Dodge City asserts that the trial court erred in denying its request for attorney fees under RCW 4.84.350. We affirm.

¶9 Under the Administrative Procedure Act (APA), ch. 34.05 RCW, Dodge City bears the burden of demonstrating the final order's invalidity. RCW 34.05.570(1)(a). We sit in the same position as the superior court when reviewing an agency action. *Valley Fruit v. Dep't of Revenue*, 92 Wn. App. 413, 417, 963 P.2d 886 (1998) (citing *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)), *review denied*, 137 Wn.2d 1017 (1999). We review the record before the reviewing administrative agency that issued the final order, here the Liquor Board; we do not consider the record before the superior court. *Valley Fruit*, 92 Wn. App. at 417 (citing *Inland Empire Distribution Sys., Inc. v. Utils. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989)). Because Dodge City does not challenge the Liquor Board's findings, they are verities. *Bullseye Distrib., LLC v. Gambling Comm'n*, 127 Wn. App. 231, 236, 110 P.3d 1162 (citing *Hertzke v. Dep't of Ret. Sys.*, 104 Wn. App. 920, 927, 18 P.3d 588 (2001)), *review denied*, 155 Wn.2d 1027 (2005). We review conclusions of law de novo. *Bullseye*, 127 Wn. App. at 237 (citing RCW 34.05.570(3)(d)).

¶10 In a de novo review of an agency decision, we may reverse the Liquor Board's final order only if the order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied, the agency has erroneously interpreted or applied the law, or the order is arbitrary or capricious. RCW 34.05-.570(3)(a), (d), (i). If Dodge City is entitled to relief, we may order the Liquor Board to take action required by law or set aside, enjoin, or stay the final order. RCW 34.05.574(1)(b). Generally, we must remand to an administrative agency's board for modification of the final order, unless remand is inappropriate or would cause unnecessary delay. RCW 34.05.574(1)(b).

COMPLIANCE CHECKS

¶11 Dodge City asserts that the ALJ should have suppressed all of the Liquor Board's evidence because the compliance checks violate constitutional protections against unreasonable searches and seizures. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. Specifically, Dodge City argues that (1) the compliance check constituted a Fourth Amendment "search" and was therefore an administrative inspection and (2) such search violated the Fourth Amendment warrant requirement. *See Camara v. Mun. Court*, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Liquor Board asserts that the compliance checks fall "squarely within the [Liquor] Board's authority to enforce liquor laws and to regulate those who voluntarily engage in the pervasively regulated liquor sales industry." Br. of Resp't at 9. The Liquor Board argues that because it conducts compliance checks in areas open to the public for business, e.g., the front door and bar, Dodge City cannot have any expectation of privacy in those areas. Because the Liquor Board's compliance check was not a search under the meaning of either the Fourth Amendment or article I, section 7, we hold that Dodge City cannot challenge the compliance check at issue here.

¶12 Generally, the presiding officer of a hearing has discretion to admit evidence, including hearsay evidence, if the evidence "is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452(1). The presiding officer must, however, exclude evidence "excludable on constitutional or statutory grounds." RCW 34.05.452(1). The Fourth Amendment and article I, section 7 protections against unreasonable searches and seizures extend to administrative or regulatory searches of commercial property. *State v. Browning*, 67 Wn. App. 93, 95, 834 P.2d 84 (1992) (citing *Camara*, 387 U.S. at 534). In the absence of a

*Gunwall*[3] analysis, Washington courts view these provisions of the state and federal constitutions as being coextensive in the context of administrative searches. *Seymour v. Dep't of Health, Dental Quality Assurance Comm'n*, 152 Wn. App. 156, 165 n.4, 216 P.3d 1039 (2009) (citing *Centimark Corp. v. Dep't of Labor & Indus.*, 129 Wn. App. 368, 375, 119 P.3d 865 (2005)). Thus, here, we must determine whether the Liquor Board's conduct was a "search" under the Fourth Amendment.

¶13 Dodge City contends that the Liquor Board's compliance check constituted a "search" and that the Liquor Board violated Dodge City's subjective privacy interest in excluding persons under 21 years old from its premises. The Liquor Board responds that the compliance check did not constitute a search because the law enforcement officers did not violate any privacy interest; the officers neither viewed beyond what would be observable by the public nor entered areas of the premises not open to the public. We agree with the Liquor Board.

¶14 A Fourth Amendment search occurs where (1) there is a subjective manifestation of privacy in the object searched and (2) society recognizes that privacy interest as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001). Where there is no privacy interest, there is no search and constitutional considerations are not implicated. *See Centimark Corp.*, 129 Wn. App. at 375.

¶15 The United States Supreme Court has explicitly recognized that "[a]n owner or operator of a business ... has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *New York v. Burger*, 482 U.S. 691, 699, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987). "This expectation exists not only with respect to traditional police searches conducted for the gathering of

---

[3] *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986) (setting forth criteria to determine if a state constitutional provision is more protective than its federal counterpart).

criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes." *Burger*, 482 U.S. at 699-700. But the Court has also recognized that regulatory inspections of commercial premises held open to the public, as opposed to commercial premises or portions of such premises restricted to all but employees or owners, is not a search and does not require a warrant. *See, e.g., See v. City of Seattle*, 387 U.S. 541, 545, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967) ("administrative entry, without consent, upon the portions of commercial premises *which are not open to the public* may only be compelled through prosecution or physical force within the framework of a warrant procedure" (emphasis added)); *see also Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978) ("[w]hat is observable by the public is observable, without a warrant, by the Government inspector as well").

¶16 In this case, the Liquor Board's actions did not constitute a search for Fourth Amendment purposes because the Liquor Board did not violate Dodge City's privacy interests. Dodge City had no reasonable privacy interest in areas of its licensed premises that it actively invites the public to enter. *Barlow's, Inc.*, 436 U.S. at 315. Even if, as Dodge City argues, it had a subjective, reasonable expectation of privacy to exclude persons under 21 years old,[4] which it did not, Dodge City lost that interest when it voluntarily admitted C.M. onto the premises. *United States*

---

[4] At oral argument, Dodge City argued that it had a subjective, reasonable expectation of privacy in excluding persons under the age of 21 because former RCW 66.24.310(1)(a) prohibits persons under 21 years old from entering its premises. We disagree. Although it is true that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude," the right to exclude, alone, does not confer a "privacy protected by the Fourth Amendment." *Compare Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), *with Oliver v. United States*, 466 U.S. 170, 183-84 n.15, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) ("The law of trespass recognizes the interest in possession and control of one's property and for that reason permits exclusion of unwanted intruders. But it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment.").

*v. Bramble*, 103 F.3d 1475, 1478 (9th Cir. 1996) (" 'Once consent has been obtained from one with authority to give it, any expectation of privacy has been lost.' " (quoting *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983))). Thus, the Liquor Board's officers did not conduct a "search" when they entered the public portions of Dodge City's premises and observed only what members of the public could also observe. Likewise, the Liquor Board's officers did not conduct a "search" when they observed C.M.'s entry into Dodge City from a public street. Accordingly, because there was no "search" in this case, the Liquor Board's actions do not implicate constitutional considerations and Dodge City has no "search" on which to base a Fourth Amendment or article I, section 7 unreasonable search and seizure claim. *Centimark Corp.*, 129 Wn. App. at 375.

ENTRAPMENT AND OUTRAGEOUS CONDUCT

¶17 Next, Dodge City argues the ALJ erred in denying its motions to dismiss the Liquor Board's complaint under the doctrines of entrapment and outrageous conduct. But Dodge City may not assert either an entrapment or an outrageous conduct defense in the administrative proceeding in this case; the defenses are available in criminal proceedings only. RCW 34.05.586(1); *see State v. Smith*, 101 Wn.2d 36, 42-43, 677 P.2d 100 (1984). To the extent Dodge City asserts it is entitled to raise the entrapment affirmative defense because RCW 66.44.310(1)(a) provides a misdemeanor violation, i.e., a criminal violation, its assertion is meritless. *Dodge City*, a Washington corporation, is not a "person" under the meaning of chapter 66.44 RCW.

¶18 RCW 34.05.586(1)(d) provides that a respondent in an administrative proceeding governed by the APA may assert as a defense only those "specifically authorized by statute to be raised in a civil enforcement proceeding." The legislature has not provided entrapment or outrageous conduct as defenses in civil enforcement proceedings. No

Washington court has ever recognized the right of a respondent in such a proceeding to assert the defenses.

¶19 In addition, RCW 9A.20.021(3) provides,

Every *person* convicted of a misdemeanor defined in Title 9A RCW shall be punished by imprisonment in the county jail for a maximum term fixed by the court of not more than ninety days, or by a fine in an amount fixed by the court of not more than one thousand dollars, or by both such imprisonment and fine.

(Emphasis added.) The penalty provision of the alcohol beverage control chapter of the RCW provides, in relevant part,

(1) *Every person* guilty of a violation of this title for which no penalty has been specifically provided:

(a) For a first offense, is guilty of a misdemeanor punishable by a fine of not more than five hundred dollars, or by imprisonment for not more than two months, or both;

(b) For a second offense, is guilty of a gross misdemeanor punishable by imprisonment for not more than six months; and

(c) For a third or subsequent offense, is guilty of a gross misdemeanor punishable by imprisonment for up to three hundred sixty-four days.

(2) *If the offender convicted of an offense referred to in this section is a corporation, it shall for a first offense be liable to a penalty of not more than five thousand dollars, and for a second or subsequent offense to a penalty of not more than ten thousand dollars, or to forfeiture of its corporate license, or both.*

RCW 66.44.180 (emphasis added). And it is well settled that

[b]oard action, directed toward the suspension or cancellation of a retail liquor license is not a criminal proceeding. Essentially, it is an administrative regulatory proceeding—civil and disciplinary in nature—the purpose of which is to protect the public health, safety and morals from imprudent, improper, and/or unlawful actions of the board's licensees in the exercise of the privilege conferred upon them. *State v. Meyers*, 85 Idaho 129, 376 P.2d 710 (1962).

*Jow Sin Quan v. Wash. State Liquor Control Bd.*, 69 Wn.2d 373, 382, 418 P.2d 424 (1966).

¶20 Here, Dodge City is not a natural "person" as contemplated by the "misdemeanor" language in RCW 66.44-.310(1)(a). Dodge City is a Washington corporation the State cannot "charge" with committing a misdemeanor. *See* RCW 9A.20.021(3). The complaint filed against Dodge City rendered it potentially liable for civil penalties as provided in RCW 66.44.180(2), not for criminal misdemeanor penalties under RCW 66.44.180(1). The unambiguous statutes provide different penalties for chapter 66.44 RCW violations by natural persons and corporations. *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976) (we give unambiguous statutory language its common and ordinary meaning). Indeed, when Washington courts have applied legal standards analogous to criminal standards in Liquor Board cases, they have done so in cases involving charges against natural persons or in those requiring proof of action by a person. *See, e.g., Oscar's, Inc. v. Wash. State Liquor Control Bd.*, 101 Wn. App. 498, 499, 505, 3 P.3d 813 (2000) (remand for the Board to make a finding analogous to the criminal definition of "knowingly," as stated in RCW 9A.08.010, that the *owner* of the bar knowingly allowed illegal drug activity on the premises).

¶21 Accordingly, because Dodge City is a corporation subject to civil penalties for chapter 66.44 RCW violations, and because the legislature has provided neither entrapment nor outrageous conduct as affirmative defenses available in civil enforcement proceedings, we hold that the ALJ did not err. RCW 34.05.570(3)(d); RCW 66.44.180(2). Even if we held that Dodge City could raise the affirmative defenses, which we do not, the claims would fail.

¶22 Entrapment occurs not when the police resort to subterfuge in apprehending a criminal after the fact, but when they induce a law-abiding person to engage in criminal conduct that he would not otherwise have committed. RCW 9A.16.070. Assuming arguendo that allowing C.M. to

enter the premises was a criminal act, nothing in the record supports a finding that the Liquor Board and its officers induced Dodge City to invite the underage aide into the bar. C.M. used his own identification card that clearly showed he was under the age of 21. And nothing in the record shows that Dodge City would not have invited any other person under the age of 21 to enter, regardless of whether that person was an investigative aide. *See State v. Gray*, 69 Wn.2d 432, 435, 418 P.2d 725 (1966) (use of a decoy to present an opportunity for commission of a crime does not constitute entrapment). Accordingly, even if Dodge City were permitted to present an entrapment affirmative defense, the defense would fail because Dodge City cannot show that it would have not otherwise engaged in the prohibited conduct. RCW 9A.16.070.

¶23 As to outrageous conduct, "[g]overnmental misconduct must somehow impact the defendant's own rights before it rises to the level of outrageousness that will justify dismissing a prosecution." *State v. Rundquist*, 79 Wn. App. 786, 797, 905 P.2d 922 (1995), *review denied*, 129 Wn.2d 1003 (1996). " 'Such conduct must be so outrageous that it violates the concept of fundamental fairness inherent in due process and shocks the sense of universal justice mandated by the due process clause.' " *Rundquist*, 79 Wn. App. 794 (quoting *State v. Pleasant*, 38 Wn. App. 78, 82, 684 P.2d 761, *review denied*, 103 Wn.2d 1006 (1984)). "But no Washington decision has dismissed a prosecution for outrageous conduct by government agents." *Rundquist*, 79 Wn. App. 794; *see also State v. Athan*, 160 Wn.2d 354, 377, 158 P.3d 27 (2007) (although police misconduct was deceitful, it was not so outrageous as to warrant dismissal of an entire case); *State v. Myers*, 102 Wn.2d 548, 689 P.2d 38 (1984), *overruled on other grounds by State v. Lively*, 130 Wn.2d 1, 921 P.2d 1035 (1996). Washington courts reject the outrageous conduct defense even in cases where the police are engaged in illegal activities. *See, e.g., State v. Jessup*, 31 Wn. App. 304, 312-14, 641 P.2d 1185 (1982) (no outrageous

conduct where police informants engaged in acts of prostitution and attempted to recruit new prostitutes).

¶24 Here, the liquor enforcement officers sent an underage investigative aide to attempt to enter Dodge City using his own identification card. The compliance check did not constitute a "search" interfering in any of Dodge City's expectations of privacy. Dodge City cannot show that the Liquor Board or its enforcement officers violated its due process rights as required to establish an outrageous conduct affirmative defense. *Rundquist*, 79 Wn. App. 794. Accordingly, Dodge City's outrageous conduct affirmative defense, even if permitted, would fail as a matter of law.

MOTION FOR CONTINUANCE

¶25 Next, Dodge City asserts that the ALJ erred in denying its motion for continuance. Hilker, Dodge City's bouncer who allowed C.M. to enter the bar, invoked his privilege against self-incrimination and declined to testify at the hearing. Dodge City moved for a continuance on that basis but the ALJ denied the motion. Dodge City asserts that the ALJ denied it the opportunity to "respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence." Br. of Appellant at 38; *see* RCW 34.05.449(2).

¶26 Generally, a presiding officer may order a continuance at a party's request if the party shows good cause. WAC 10-08-090. There is no mechanical test for determining when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result. *State v. Eller*, 84 Wn.2d 90, 96, 524 P.2d 242 (1974). Instead, the determination is made on a case-by-case basis. *Eller*, 84 Wn.2d at 96. We will affirm the ALJ's denial of Dodge City's motion unless Dodge City can show that it was prejudiced or the result of the proceedings would have likely been different had the continuance been granted. *State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (citing *Eller*, 84 Wn.2d at 95-96), *review denied*, 125 Wn.2d 1002 (1994).

¶27 Here, Dodge City claimed that it could not proceed without testimony from its "most important witness." Br. of Appellant at 38. But Hilker had the right to refrain from giving testimony tending to incriminate himself. U.S. Const. amend. V; *State v. Lougin*, 50 Wn. App. 376, 379-80, 749 P.2d 173 (1988) (privilege against self-incrimination includes the right of a witness not to give incriminatory answers in any proceeding). It does not appear from the record that Dodge City stated when in the future or under what different circumstances Hilker would ever agree to give the testimony Dodge City claimed it could not proceed without. Dodge City did not attempt to subpoena Hilker. To the extent Hilker was willing to testify without incriminating himself, his written voluntary statement was already included in the administrative record. *Lougin*, 50 Wn. App. at 381 (claim of privilege may be raised only against specific questions, not as a blanket foreclosure of testimony).

¶28 On appeal, Dodge City does not argue with any specificity that it has been prejudiced or that the proceedings below would have substantially differed if the ALJ had granted its motion. Rather, Dodge City, without citation to legal authority or relevant portions of the administrative record, vaguely asserts the ALJ's denial of its motion violated its due process rights. RAP 10.3(a)(6). Because Dodge City has failed to show good cause for why the ALJ should have granted its motion for continuance, we hold that the ALJ did not err in denying the motion.

ATTORNEY FEES

¶29 Last, Dodge City asserts it is entitled to attorney fees under RCW 4.84.350 and RAP 18.1. RCW 4.84.350(1) provides that

> a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to

have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

An agency action is "substantially justified" if it " 'has a reasonable basis in law and fact.' " *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 892, 154 P.3d 891 (2007) (quoting *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 420, 97 P.3d 17 (2004)). Here, Dodge City cannot challenge a search that did not occur. The Board's compliance check was substantially justified and Dodge City is not a prevailing party. Accordingly, we hold that Dodge City was not entitled to attorney fees from the superior court and we deny its request for an award on appeal. RAP 18.1.

¶30 We affirm.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 176 Wn.2d 1009 (2012).