IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRADSHAW DEVELOPMENT, INC. d/b/a ANYTIME FITNESS, | ) ) ) | No. 40360-2-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) ) | |

FEARING, J. — This appeal asks us to decide whether Department of Labor and Industries (DLI) inspectors possessed authority to tailgate a fitness club member through an otherwise locked door into the fitness club to ask for permission to inspect the business premises for employees working during the COVID-19 pandemic when the business should have been closed. In answering this question, we interpret RCW 49.17.070, which authorizes inspectors to enter commercial premises at "a reasonably recognizable entry point." We also apply Fourth Amendment principles. We conclude that tailgating behind an entrant who opened an outside door with her keycard constituted an unreasonable point of entry and violated the fitness club owner's reasonable expectation of privacy. Thus, we affirm the superior court's dismissal of a citation against Bradshaw Development, Inc. for

violating Proclamation by Governor Jay Inslee, No. 20-25.4 (Wash. May 31, 2020),

https://governor.wa.gov/sites/default/files/2023-01/20-25.4%20-%20COVID-

19%20Safe%20Start.pdf [https://perma.cc/4HY6-S2CM] and WAC 296-800-14035.

FACTS

This appeal concerns the alleged violation by Bradshaw Development, Inc., owner

of Anytime Fitness, a fitness club, of WAC 296-800-14035(1), an interim DLI regulation

precluding employees of a nonessential business from laboring during Phase 1 of

Washington State's pandemic business reopening order. In response to the COVID-19

pandemic, Washington State Governor Jay Inslee issued Emergency Proclamation

20-25.4, effective May 31, 2020, which imposed a plan to reopen businesses in four

phases. Under Phase 1, the most restrictive of the four phases, only the following

businesses could reopen:

- Essential businesses open
- Existing construction that meets agreed upon criteria
- Landscaping
- Auto/RV/Boat/ORV sales
- Retail (curb-side pick-up orders only)
- Car washes
- Pet walkers

Clerk's Papers (CP) at 728. Phase 1 required temporary closure of nonessential

businesses, including fitness centers. To implement Emergency Proclamation 20-25.4,

DLI issued WAC 296-800-14035(1) that declared: when "a business activity is prohibited

2

by an emergency proclamation an employer shall not allow employees to perform work."
CP at 5.

According to Anne Foote Soiza, DLI's Assistant Director in charge of the Division of Occupational Safety and Health, when DLI received a complaint about an operating nonessential business during Phase 1, the department first wrote a letter to the business to inform it about the extent to which it may be open, if at all. After sending the letter, DLI contacted the business by letter or phone to determine whether the business followed the restrictions mentioned in the educational letter. A DLI Compliance Safety and Health Officer, which we label an inspector, might then inspect the business. DLI issued a cease and desist letter if the business remained open.

Wesley Bradshaw owns Bradshaw Development, Inc. In 2020, Bradshaw Development operated four fitness centers in Yakima County under the name Anytime Fitness. During Phase 1 of Emergency Proclamation 20-25.4, DLI received a complaint that Anytime Fitness facilities remained open. DLI sent Bradshaw a cease and desist letter ordering, under Emergency Proclamation 20-25.4 and WAC 296-800-14035, that operations cease. Bradshaw ignored the letter. Anytime Fitness centers remained open for its members.

This appeal concerns only one of the four Anytime Fitness facilities, the Selah center. During the morning of June 15, 2020, DLI inspectors Stacia Johnson and Steve

3

Yunker traveled to the Selah facility. Upon their arrival, Yunker and Johnson observed a lit, neon "Open" sign on the facility's building. CP at 6, 1187, 1487. Johnson called the phone number listed on the front door of the facility but no one answered. The two inspectors watched an individual adorned in gym clothing and carrying a gym bag employ a keycard to unlock the front door of the gym. Yunker grabbed the door before it closed. The duo followed the individual through the open door.

Inside the fitness center, Steve Yunker and Stacia Johnson observed three individuals sitting in an office and ten individuals using gym equipment. According to Johnson, two of the three individuals in the office worked for Anytime Fitness and the third individual "appeared to be a customer signing up for a new gym membership." CP at 1188. Yunker and Johnson displayed their DLI badges to one of the employees and requested consent to search the premises. The worker denied consent, but invited Yunker and Johnson to wait while he or she called general manager, Jeff Mercer. Mercer arrived twenty minutes later. While the DLI inspectors waited inside the gym for Mercer's arrival, they observed people entering the building. The two saw a chalkboard sign near the entrance of the building bearing the inscription "Welcome back." CP at 6, 32, at 1189.

When Jeff Mercer arrived, Steve Yunker and Stacia Johnson presented their credentials and informed him of the purpose of their visit. They requested consent to

4

search the premises, which consent Mercer denied while asserting that the space was "private property." CP at 1189. Yunker suggested they continue the conversation outside in the parking lot, on "public property." CP at 1189, 1487. While outside, Mercer labeled the emergency proclamation a "joke." He insisted that Anytime Fitness would not close and that the inspectors violated the constitution. CP at 6, 1190. While outside of the gym, Johnson saw the "Welcome back" sign through a window and watched more individuals enter the gym. CP at 1201-02.

On June 25, 2020, DLI issued a citation, under WAC 296-800-14035, against Bradshaw Development, Inc. for the June 15 operation of Anytime Fitness in Selah. DLI also issued citations against Bradshaw Development for three other violations at different locations and on different dates.

## PROCEDURE

Bradshaw Development, Inc. challenged the citations. During this challenge, Bradshaw Development asserted that none of its employees performed work activities at the locations at issue during the times in question.

During an administrative hearing, DLI inspector Stacia Johnson averred during cross-examination:

> Q. When you accessed the premises prior to the inspection, you said you went in the door.

5

Did you follow in through a door that was opened by someone who accessed that door with a key?

A. Yes.

Q. So you didn't have permission to enter that establishment; correct?

A. No. Not at that time.

. . . .

Q. Were you waiting at the front door until that door was opened by someone with a key pad?

A. We were at the front door. We were at the front door calling the phone number that was listed on the front door, waiting for somebody to answer the phone.

Q. Then you saw someone walk up to the front door and bring out a key card and access the building; correct?

A. Yes.

Q. When they opened the door, that's when you went in?

A. At that time, my supervisor, Steve Yunker, went and said—went and grabbed the door and followed her in. So I followed.

Q. Without permission; correct?

A. Yes.

Q. You didn't have a key card to access that facility; correct?

A. No.

. . . .

Q. So when you were inside Anytime Fitness, you were not in the course of your inspection; is that correct?

A. We had not opened the inspection, but we are able to observe.

CP at 1194-96.

An industrial appeals administrative law judge (ALJ) determined that DLI failed to establish that employees of Anytime Fitness worked at any of the four facilities on the identified dates. The ALJ vacated all four citations. DLI appealed to the Board of Industrial Appeals (Board). DLI argued that the combined observations of Steve Yunker

and Stacia Johnson, with reasonable inferences drawn from the evidence, proved that

Anytime Fitness committed the violations because of the presence of an employee in

each facility.

The Board agreed with the ALJ that DLI failed to present sufficient evidence to

establish that employees at Anytime Fitness locations other than Selah worked on the

stated dates. The Board, however, concluded that DLI presented sufficient evidence,

through Stacia Johnson's testimony, to establish that employees at the Selah location

worked on June 15 in violation of Emergency Proclamation 20-25.4 and WAC 296-800-

14035. The Board affirmed the one citation, reasoning:

> The lit "open" neon sign in the window of the Selah Anytime facility and Ms. Johnson's observation of a person who was carrying a gym bag enter the facility left no doubt that the fitness center was open for business. She and Mr. Yunker had the right to enter the building for the sole purposes of obtaining consent to inspect the premises. They did so in a safe manner and at a reasonably recognizable entry point. Yes, they entered the building by "tailgating" a member, but they used the only obvious entrance. And, in a facility with a unique business model like Anytime, this was the only feasible means of entering the building "without delay," as the statute provides.
>
> Mr. Yunker and Ms. Johnson did not conduct an inspection while they awaited Mr. Mercer's arrival. Because she had the right to be where she was while she waited for the general manager, Ms. Johnson's plain view observations were admissible. RCW 49.17.070(4) recognizes that these observations are exceptions to any warrant requirement and obviously does not require consent of the owner. Other than Mr. Mercer, who was not at the fitness center when Ms. Johnson arrived, none of the people she saw at the Selah facility identified themselves either by name or as employees. The Department presented only circumstantial evidence that

those people were Anytime employees and that they were performing work activities. By application of experience and reason, a fact finder may infer the existence of a specific fact based on circumstantial evidence. Credible circumstantial evidence is entitled to the same weight as direct evidence.

The circumstantial evidence about which Ms. Johnson testified supported the notion that the people whom she observed on June 15, 2020, were, in fact, Anytime employees who were performing work activities at the business.

> 1. The lit neon "open" sign in the window and the "welcome back" message on the chalkboard strongly indicated that the facility was open for business as usual.
>
> 2. The person from whom Ms. Johnson initially requested consent to conduct an inspection denied that he had the authority to do so but he told Ms. Johnson to wait until he could contact the general manager. He apparently did so—Mr. Mercer arrived within 20 minutes. It is unlikely that a person who was only a member would have assumed that he had authority to ask Ms. Johnson to wait for the general manager or that he would have known how to contact Mr. Mercer and that he would have done so.
>
> 3. It is probable that the three people Ms. Johnson observed in the office were Anytime employees. The office of a business is an area that common sense and experience indicate is reserved for employees.
>
> 4. The activities of the two people Ms. Johnson concluded were assisting a person enroll as a new member were consistent with those of employees, not members. It is highly unlikely that Mr. Bradshaw would have authorized a non-employee to accept a new member.

The inferences that we derive from Mr. Bradshaw's refusal to answer questions, in combination with the circumstantial evidence the Department presented by way of Ms. Johnson's observations, produced a simple preponderance of the persuasive evidence that Anytime committed a willful general violation of WAC 296-800-45035(1) on June 15, 2020, because it had employees who were performing work activities.

We affirm Citation and Notice No. 317959774.

CP at 28-29.

The Board entered, in part, the following findings of fact:

5. On June 15, 2020, Compliance Safety and Health Officers (CSHOs) employed by the Department of Labor and Industries visited Anytime's Selah, Yakima County location, to see if the business was in compliance with the governor's proclamation. On arrival, they saw a lit neon "open" sign in the window of the building but the doors opened only to individuals who had key cards. No one answered the telephone call they made to the business. For the sole purpose of obtaining consent to conduct an inspection, the CSHOs followed into the facility a woman who was carrying a gym bag and opened the front door. Approximately ten people were using the exercise equipment, three individuals were sitting in an office, and two people were assisting a new member enroll in the fitness center. The CSHOs presented their badges to one of the individuals and asked for permission to open an inspection. That person denied consent but asked the inspectors to wait where they were for the general manager to arrive. As they waited, the CHSO; observed several people enter the building as well as a chalkboard on which was written, "Welcome back." When the general manager arrived 20 minutes later, he refused to give consent for an inspection and the CSHOs left.

6. On June 15, 2020, the three people who were assisting the new member were Anytime employees whom Mr. Bradshaw allowed to engage in work activities.

. . . .

8. Mr. Bradshaw allowed his employees to engage in work activities on June 15, 2020, in willful disregard of the governor's emergency proclamation because he had received the Department's educational and cease and desist letters, but he continued to operate the Selah Anytime facility in plain indifference to WAC 296-800-14035(1).

CP at 32.

Bradshaw Development appealed, to the superior court, the Board's decision that affirmed the June 15 citation for the Selah facility. The superior court reversed. The superior court entered the relevant conclusions:

1. Protection against unreasonable searches and seizures extends to commercial property if there is a reasonable expectation of privacy. An expectation of privacy in commercial premises is different, and less significant, than a similar expectation in an individual's home. No search warrant is necessary for areas that are open to the public. But a warrant may be necessary to inspect the portions of commercial premises that are not open to the public. A business that limits entry to keycard holders is not open to the public. Therefore, Anytime Fitness had a reasonable expectation of privacy in the commercial premises. State and federal constitutions require a warrant to inspect the area inside the keycard accessible doors.

2. DLI inspectors have a statutory right of entry to a worksite. They may enter a business without notice through a reasonably recognizable entry point. The Inspectors' phone calls to the published phone number went unanswered. They were unable to obtain a designation for point of entry or consent for an inspection. Tailgating on a gym member's keycard was a reasonably recognizable entry point under the circumstances. However, the statute [RCW 49.17.070(3)] limits the Inspectors' entry to the sole purpose of requesting consent for an inspection. Because the statute that allows entry without consent limits the purpose for the entry, the plain view doctrine did not apply. The Inspectors' purpose for gaining entry to a private space was limited by the statute to the sole purpose of obtaining consent.

3. The Administrative Procedures Act requires a presiding officer in an adjudicatory hearing to exclude evidence that is excludable on constitutional or statutory grounds. The evidence of what the inspectors saw while waiting to obtain consent for the inspection must be excluded.

4. Excluding evidence of employees at the worksite requires the remaining citation to be dismissed for lack of evidence.

CP at 1293-94.

On May 20, 2024, the superior court entered a judgment that reversed the one

citation upheld by the Board.  The judgment reads in part:

> . . . .
>
> 4. An owner of a business has an expectation of privacy in commercial property which society is prepared to consider reasonable, *Dodge City Saloon, Inc. v. Washington State Liquor Control Board.*, 168 Wn. App. 388, 398, 288 P.3d 343, 347 (2012).  It is well settled law in Washington that regulatory inspections of commercial premises that are not held open to the public require either consent or a search warrant.  Conversely, inspecting areas held open to the public, as opposed to commercial premises or portions of such premises restricted to all but employees or owners, is not a search and does not require a warrant. *Dodge City Saloon, Inc*, 168 Wn. App. at 398.
>
> 5. At the time of the inspection, Anytime Fitness was not open to the public but it was open to members.  The record established that entry to the building was restricted to authorized persons with keycard access and that the gym was being utilized.  This court has previously found the inspectors' tailgating behind an authorized user was a reasonable point of entry for purposes of obtaining the owner's consent.

CP at 1304-05.

## LAW AND ANALYSIS

DLI appeals the superior court ruling dismissing the citation issued against the

Selah Anytime Fitness facility.  In response, Bradshaw Development contends DLI

inspectors lacked authority to enter the locked door of the Selah Anytime Fitness facility.

Thus, according to Bradshaw Development, DLI inspectors violated the law when

tailgating the gym member into the facility.  Because of its being locked, the door did not

qualify as a reasonably recognizable entry point under RCW 49.17.070(3).  In turn, in

11

conformance with the superior court's ruling, the law precluded DLI from relying on any observations of the inspectors while inside. Bradshaw Development assigns no error to the Board's findings of fact.

DLI responds that DLI inspectors entered the Selah facility door through a reasonably recognized point of entry as understood by RCW 49.17.070. DLI emphasizes that the door entered was the facility's front door. Thus, according to DLI, its inspectors possessed lawful authority to enter the door even if they tailgated. Although RCW 49.17.070(3) may have limited the inspectors to asking for consent to inspect once inside, the statute also permits the inspectors to later testify to their observations during the course of asking for and waiting for consent. DLI insists that the plain view or open view doctrine shields the inspector's testimony because of the language of RCW 49.17.070(4). DLI does not argue that its inspectors possessed authority to enter the facility regardless of the application of RCW 49.17.070(3). DLI does not argue that evidence gathered by its inspectors outside the Selah facility suffices to prove the regulation violation.

In reply, Bradshaw Development insists that, even if the law permitted the inspectors to testify to observations inside the Selah facility, DLI failed to present any evidence at the ALJ hearing that an employee then worked inside the premises. To show a violation, DLI needed to establish by a preponderance of evidence the presence of an employee currently working. Bradshaw Development emphasizes that, because of the

12

nature of a 24/7 fitness center, the facility may be open without any employee being present. We do not address Bradshaw Development's alternate argument because we rule that DLI inspectors lacked authority, under RCW 49.17.070(3), to enter the locked premises. When concluding the inspectors lacked authority, however, we rely on the unique nature of a 24/7 fitness club.

Under the Administrative Procedures Act (APA), chapter 34.05 RCW, we sit in the same position as the superior court when reviewing an agency action. *Tapper v. State Employment Security Department*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We review the record before the reviewing administrative agency, the Board of Industrial Insurance Appeals, not the record before the superior court. *Inland Empire Distribution Systems, Inc. v. Utilities & Transportation Commission*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989). Because Bradshaw Development does not challenge the Board's findings of fact, they are verities. *Dodge City Saloon, Inc. v. Washington State Liquor Control Board*, 168 Wn. App. 388, 395, 288 P.3d 343 (2012).

The focal question on appeal is whether DLI agents held authority, under RCW 49.17.070(3), to enter the Anytime Fitness Selah facility by tailgating behind a club member despite the entry door being locked to the public. RCW 49.17.070 governs DLI agents' entry into business premises to investigate purported violations of regulations. The statute reads in relevant portion:

Right of entry—Inspections and investigations—Subpoenas—Contempt.

(1) Subject to subsections (2) through (5) of this section, the director, or his or her authorized representative, in carrying out his or her duties under this chapter, upon the presentation of appropriate credentials to the owner, manager, operator, or on site person in charge of the worksite, is authorized:

(a) *To enter without delay* and at all reasonable times the factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer; and

(b) To inspect, survey, and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such workplace and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.

. . . .

(3) Except as provided in subsection (4) of this section or RCW 49.17.075, the director or his or her authorized representative shall obtain consent from the owner, manager, operator, or his or her on-site person in charge of the worksite when entering any worksite located on private property to carry out his or her duties under this chapter. *Solely for the purpose of requesting the consent required by this section, the director or his or her authorized representative shall, in a safe manner, enter a worksite at an entry point designated by the employer or, in the event no entry point has been designated, at a reasonably recognizable entry point.*

(4) This section does not prohibit the director or his or her authorized representative from *taking action consistent with a recognized exception to the warrant requirements* of the federal and state Constitutions.

(5) This section does not require advance notice of an inspection.

(Emphasis added.)  One should read RCW 49.17.070 with RCW 49.17.075, which authorizes a search warrant.  The latter statute reads:

14

> The director may apply to a court of competent jurisdiction for a search warrant authorizing access to any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer. The court may upon such application issue a search warrant for the purpose requested.

At the time of the adoption of RCW 49.17.070, the legislature declared:

> The legislature also intends that the inspections comply with the fourth and fourteenth amendments to the United States Constitution and Article I, section 7 of the state Constitution.

LAWS OF 2006, ch. 31, § 1. RCW 49.17.070(3)'s demand that the DLI inspectors gain consent to search further confirms the desire by the state legislature that the search be performed pursuant to reasonable search and seizure restrictions.

We must decide whether the door entered by Stacia Johnson and Steve Yunker qualified as "a reasonably recognized entry point" under RCW 49.17.070(3). The statute does not define any of these words. No case law aids in circumscribing the unique term. Because the employer designates the other entry point mentioned in the statute, we gauge a reasonably recognized entry point from the viewpoint of a member of the public, not the viewpoint of the employer.

DLI does not expressly argue that commercial premises, in which employees toil, must maintain a reasonably recognizable entry point. We would reject such an interpretation anyway. RCW 49.17.070(3) references "*a* reasonably recognizable entry point" rather than "*the* reasonably recognizable entry point." We emphasize the use of

15

the indefinite article "a." The articles in a statutory text—the definite articles and the indefinite articles—should not be overlooked or discounted, but should be treated as being chosen by design and as intending a particularized effect. *Guardado v. Guardado*, 200 Wn. App. 237, 243, 402 P.3d 357 (2017); *In re A.P.*, 245 W.Va. 248, 254, 858 S.E. 2d 873 (2021). If the statute employed the definite article "the," we would conclude that Anytime Fitness needed to maintain a reasonably recognizable entry point. But the indefinite article "a" implies that the business premises need not have any such entry point.

Because the state legislature wanted RCW 49.17.070(3) to be interpreted in compliance with constitutional principles, we rely heavily on constitutional law when deciding that entering a locked door by tailgating does not qualify as entering a reasonably recognizable entry point. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, section 7 of the Washington Constitution provides:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

The protections of article I, section 7 of the Washington Constitution extend to administrative searches coextensively with those of the Fourth Amendment. *Seymour v. Washington State Department of Health, Dental Quality Assurance Commission*, 152 Wn. App. 156, 165, 216 P.3d 1039 (2009); *Centimark Corp. v. Department of Labor & Industries*, 129 Wn. App. 368, 375, 119 P.3d 865 (2005).

In the constitutional setting, the right to privacy applies to areas with a reasonable expectation of privacy combined with a subjective manifestation of privacy in the place searched. *Kyllo v. United States,* 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001); *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 374 (2005). Protection against unreasonable searches and seizures extends to commercial property. *Seymour v. Washington State Department of Health, Dental Quality Assurance Commission*, 152 Wn. App. 156, 164 (2009); *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 377 (2005). The United States Supreme Court has explicitly recognized that an owner or operator of a business has an expectation of privacy in commercial property, which society considers reasonable. *New York v. Burger*, 482 U.S. 691, 699, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987). The business owner, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. *See v. City of Seattle*, 387 U.S. 541, 543, 87 S. Ct. 1737, 18 L. Ed. 2d 943

17

(1967). The business owner, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by warrant. *See v. City of Seattle*, 387 U.S. 541, 543, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967).

Fourth Amendment protection covers administrative inspections designed to enforce regulations. *New York v. Burger*, 482 U.S. 691, 699, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987); *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 377 (2005). Inspections for health, safety, and other violations of codes must be conducted pursuant to a warrant or fall within one of the narrowly drawn exceptions to the warrant requirement. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967); *Thurston County Rental Owners Association v. Thurston County*, 85 Wn. App. 171, 183, 931 P.2d 208 (1997).

A government inspection of commercial premises normally requires a warrant. *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 377 (2005). But that protection, just like protection for other buildings, must come from a reasonable expectation of privacy. *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 377 (2005). An expectation of privacy in commercial premises holds less significance than a similar expectation in an individual's home. *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn.

App. 368, 377 (2005).  A warrantless entry into a business is unreasonable only if the business is closed or the search extended into non-public areas.  *New York v. Burger*, 482 U.S. 691, 699 (1987); *See v. City of Seattle*, 387 U.S. 541, 545 (1967).  Regulatory inspections of commercial premises held open to the public, as opposed to commercial premises or portions of such premises restricted to all but employees or owners, is not a search and does not require a warrant.  *See v. City of Seattle*, 387 U.S. 541, 545 (1967).

In ruling that Bradshaw Development, Inc. maintained a reasonable expectancy of privacy inside the Selah facility, we rely principally on the external door being locked.  A locked door to an internal space may demonstrate objectively reasonable expectations of privacy and security therein.  *People v. Garcia*, 62 Cal. 4th 1116, 1129, 365 P.3d 928, 936, 199 Cal. Rptr. 3d 164 (2016).  A locked door is a very strong manifestation of a person's expectation of privacy.  *People v. Trull*, 64 Ill. App. 3d 385, 389, 380 N. E. 2d 1169 (Ill. App. Ct. 1978).

In the context of law enforcement entering commercial premises without a warrant pursuant to a routine after-hours security check undertaken to protect the interests of the property owner, the Alaska Supreme Court considered whether the officers had reason to believe that the owner would not consent to such an entry.  Because a reasonable officer would have concluded that the owner wished the officers to enter when they found an unlocked door, the court upheld the constitutionality of the search inside the premises.

19

*State v. Myers*, 601 P.2d 239, 243-44 (Alaska 1979). A reasonable DLI inspector would doubt that the owner of Anytime Fitness' premises would consent to a search through a locked external door on June 15, 2020.

The Fourth Amendment and article I, section 7 only preclude searches and seizures of property. DLI suggests that its inspectors engaged in no search. Our ruminating whether a search occurred harms DLI more than benefits it. According to the United States Supreme Court, a search occurs when the government obtains information by physically intruding on persons, houses, papers, or effects. *Florida v. Jardines*, 569 U.S. 1, 5, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013). Entering a locked door without a key and without consent constitutes an intrusion.

Our resolution of this appeal does not come easy. Sound arguments support DLI's position that its inspectors possessed authorization to enter the locked door by tailgating and whatever the inspectors saw while awaiting consent is admissible under the open view or plain view doctrine. The COVID-19 pandemic was a disaster unlike any the citizens of Washington have seen before. *Matter of Recall of Inslee*, 199 Wn.2d 416, 434, 508 P.3d 635 (2022). The disease constituted a potentially fatal workplace hazard. The Washington State Constitution mandates that the Legislature adopt workplace safety protections for Washington workers. WASH. CONST. art. II, § 35. Worker safety is

fundamental right. *Martinez-Cuevas v. DeRuyter Brothers Dairy, Inc.*, 196 Wn.2d 506, 519-20, 475 P.3d 164 (2020).

On June 15, 2020, the Anytime Fitness Selah facility displayed an open sign. Anytime Fitness proudly flaunted its violation of COVID-19 restrictions based on its belief in the unconstitutionality of the restrictions. Anytime Fitness took no steps to prevent tailgating by outsiders. Locked doors at a 24/7 fitness club serve to protect the physical safety of club members who enter the club at odd night or early morning hours, not necessarily to protect the privacy of members. Stacia Johnson and Steve Yunker entered during normal business hours.

DLI emphasizes that members of the public sat in the office to apply for a membership. We do not know how these individuals entered the fitness club. They likely gained consent to proceed beyond a locked door. When Jeff Mercer came to the fitness club and objected to DLI's search of the premises, the parties moved their discussion outside. We also observe that the locked doors serve the purpose, during normal business hours, to preclude trespassers that would otherwise be tolerated in another business fully open to the public.

We recognize, as argued by DLI, that RCW 49.17.070(1)(a) directs that L&I inspectors enter jobsites "without delay." Nevertheless, we emphasize that the DLI inspectors could have applied for a warrant to enter and search the Selah facility. RCW

21

49.17.075. They could have garnered the search warrant without having tipped off employees of Anytime Fitness that they sought to search the premises. No emergency excused the failure to apply for a warrant.

Police officers generally need a warrant to search a place in which a person has a reasonable expectation of privacy. *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The bulwark of Fourth Amendment protection is the warrant clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search. *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Under Article I, section 7 of the Washington Constitution, the authority of law required by that article is satisfied by a valid warrant. *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007).

The United States Supreme Court has noted some pervasively regulated industries wherein Fourth Amendment protections loosen because the government needs unannounced inspections to secure compliance with extensive regulations. These industries include alcohol and firearms. *United States v. Biswell*, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970). No court has considered the fitness club industry to qualify for special search and seizure rules.

22

DLI encourages us to defer to the Board's finding of fact that the DLI inspectors entered a reasonably recognizable entry point. We consider this finding more in the nature of a conclusion of law. More importantly, assuming we accepted the finding, we would still conclude that entry through the locked door violated Bradshaw Development's rights under the Fourth Amendment and article 1, section 7.

The APA provides that the presiding officer of an adjudicatory hearing shall disregard evidence excludable on constitutional or statutory grounds. RCW 34.05.452(1). The exclusionary rule requires suppression of evidence obtained as the result of an unconstitutional search. *Centimark Corp. v. Department of Labor & Industries of Washington*, 129 Wn. App. 368, 374 (2005). The ALJ, and in turn the Board, should have rejected any testimony of the DLI inspectors as to their observations inside the Selah facility.

In the conclusion of its brief, Bradshaw Development seeks an award of reasonable attorney fees and costs incurred during this proceeding. Nevertheless, Bradshaw Development provided no citation to authority that supports an award. RAP 18.1(a) and (b) require a party seeking reasonable attorney fees and costs to devote a section of its opening brief to detailing the basis on which the court should award fees. Because Bradshaw Development failed to follow this rule, we decline its request.

No. 40360-2-III

*Bradshaw Development, Inc. v. Dep't of Labor & Industries*

CONCLUSION

We affirm the superior court's ruling dismissing the citation issued against

Bradshaw Development on June 15, 2020.  We deny Bradshaw Development an award of

reasonable attorney fees and costs.

_____
Fearing, J.

WE CONCUR:

_____
Cooney, J.

_____
Staab, A.C.J.

24